******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VILLAGE MORTGAGE COMPANY *v.* RONALD
GARBUS ET AL.
(AC 42667)

Bright, C. J., and Lavine and Cradle, Js.*

*Syllabus*

The plaintiff, M Co., a mortgage company, sought a declaratory judgment
to determine whether the defendants were lawful owners of shares of
stock in M Co. In 1998, the defendants purchased 300 shares of stock
in M Co. but, thereafter, they returned the certificate of stock and M
Co. reimbursed the defendants their investment. M Co. alleged that in
2011, the stock certificate was returned to the defendants by V, the
cofounder of M Co., and that the defendants' stock was improperly
reissued or returned to them, without proper corporate authorization
and for less than the fair value of the stock. The trial court determined
that the defendants were not lawful shareholders of M Co. because,
although they were listed as original shareholders, their ownership inter-
est was relinquished soon thereafter, and V had no actual or apparent
authority to issue shares in M Co. to the defendants. On appeal, the
defendants claimed that M Co. alleged a claim of tortious financial
misconduct and, therefore, the trial court improperly concluded that
the declaratory judgment action was not barred by the applicable statute
of limitations (§ 52-577). *Held* that the trial court correctly determined
that no statute of limitations applied to bar M Co.'s declaratory judgment
action, rather, that the special defense of laches applied and that the
defendants failed to prove that special defense: the trial court correctly
interpreted that the allegations in M Co.'s complaint were not predicated
on a note or agreement and that, despite the defendants' claim to the
contrary, M Co. did not plead the elements of fraud, statutory theft, or
conspiracy, and the defendants failed to identify those allegations in
the complaint, M Co. did not seek damages but, rather, a judicial determi-
nation as to whether the defendants were legally shareholders, and the
determination of who had the superior claim was inherently an equitable
one, particularly where there was no claim or finding that any of the
parties engaged in tortious financial misconduct or breached a contract;
moreover, the trial court's decision to take judicial notice of a related
proceeding, in which V was found to have engaged in various acts of
financial misconduct, related to the defendants' laches special defense,
in that the trial court had an evidentiary basis on which to find facts
that explained how the shares of stock were returned to the defendants
in 2011 and how M Co. learned of V's misconduct, and the trial court
in the present case did not find or imply that either of the defendants
participated in any of V's misconduct.

Argued September 14—officially released December 22, 2020

*Procedural History*

Action for a declaratory judgment to determine
whether the defendants were lawful stockholders of the
plaintiff, brought to the Superior Court in the judicial
district of Hartford and tried to the court, *Hon. Robert
B. Shapiro*, judge trial referee; judgment declaring that
the defendants are not lawful shareholders of the plain-
tiff, from which the defendants appealed to this
court. *Affirmed.*

*Gregory T. Nolan*, with whom, on the brief, was *Patsy
M. Renzullo*, for the appellants (defendants).

*Richard P. Weinstein*, with whom, on the brief, was
*Sarah Black Lingenheld*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this declaratory judgment action, the defendants, Ronald Garbus and Georganne Garbus, appeal from the judgment of the trial court, declaring that the defendants are not lawful stockholders of the plaintiff, Village Mortgage Company. The defendants claim that the court improperly concluded that the plaintiff's cause of action is akin to an equitable claim for injunctive relief subject to the doctrine of laches, rather than a legal claim for tortious financial misconduct subject to the statute of limitations, specifically General Statutes § 52-577. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendants' appellate claim. The plaintiff commenced the present action on March 17, 2016. On September 27, 2016, the plaintiff filed an amended complaint (complaint), alleging in relevant part that it is a corporation existing under the laws of this state since at least 1998. In 1998, the defendants were original stockholders of the plaintiff, having received 300 shares of stock, Certificate No. 2, for an investment of $30,000. That same year, the defendants returned Certificate No. 2 and were reimbursed $30,000, apparently as a result of issues involving the defendants' third-party creditors. The plaintiff alleged that the defendants' return of Certificate No. 2 and the plaintiff's reimbursement to them of the invested sum amounted to a rescission of the defendants' acquisition of stock in the plaintiff. The plaintiff further alleged that in June, 2011, Certificate No. 2 apparently was returned to the defendants in exchange for $30,000, without proper corporate authority. Moreover, the stock was transferred to the defendants for substantially less than the fair value of the stock in June, 2011.

In addition, the plaintiff alleged that the circumstances involving the defendants and the stock recently had come to light as a result of the plaintiff's litigation against the cofounder of the corporation,[1] who surreptitiously was involved in the 1998 stock rescission and the 2011 return of stock to the defendants. On February 2, 2016, the plaintiff demanded a detailed explanation from the defendants with respect to the rescission and return of stock, but the defendants neglected and failed to respond to the demand. The plaintiff alleged that to the extent that the defendants' stock was improperly reissued or returned to the defendants in June, 2011, without proper corporate authorization and for less than the fair value of the stock, it contested whether the defendants are lawfully stockholders with rights to own, to possess, and to vote the shares of stock. Finally, the plaintiff alleged that a bona fide dispute exists with regard to the defendants' ownership of the shares for which there is no adequate remedy at law and which requires a judicial determination as to whether the

defendants are lawfully shareholders of the plaintiff. The plaintiff claimed no damages.

In their answer to the complaint, the defendants admitted that the plaintiff is a corporation having been in existence since at least 1998. They denied the remaining allegations of the complaint and alleged three special defenses, essentially that the plaintiff's cause of action is barred by (1) the statute of limitations[2] or (2) laches,[3] and that (3) James Veneziano, the plaintiff's cofounder, acted with apparent authority.[4]

The plaintiff denied each of the defendants' special defenses and pleaded the following by way of avoidance. "Upon information and belief, the defendants conspired with . . . Veneziano to avoid disclosure of the defendants' purported stock interest in [the plaintiff] in order to conceal same from creditors and particularly the [Federal Deposit Insurance Company] and/or conceal same from the bankruptcy court in connection with a certain bankruptcy petition filed by one or more of the defendants. As a result of the aforesaid, the defendants are legally and equitably estopped from asserting the defenses raised in the instant action, especially in that . . . Veneziano concealed the facts in regard to the circumstances surrounding the transfers of the stock and any such action taken by . . . Veneziano was without corporate authority, apparent or otherwise, constituted [an] ultra vires act and an act which would have been in violation of civil if not criminal law. In order to invoke equitable considerations such as laches, the defendants themselves [have] unclean hands and are precluded from relying upon said doctrine."

The case was tried to the court. Counsel for the parties presented evidence concerning ownership of the shares of stock at issue on October 17, 2018,[5] and thereafter submitted briefs on December 3, 2018. The court issued its memorandum of decision on January 29, 2019. In its decision, the court first reviewed the allegations of the complaint, the defendants' special defenses, and the plaintiff's reply to the special defenses and by way of avoidance.

The court noted that, in a case tried to the court, the judge is "the trier of fact, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 637, 153 A.3d 1264 (2017). It thereafter reviewed the law regarding an action for declaratory judgment.

General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." See also Practice Book § 17-55.[6]

"The purpose of a declaratory judgment action, as

authorized by . . . § 52-29 and Practice Book § [17-55], is to secure an adjudication of rights [when] there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties. . . . Subdivisions (1) and (2) of Practice Book § 17-55 respectively require that the plaintiff in a declaratory judgment action have an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations and that there be an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties . . . ." (Citation omitted; internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 747, 36 A.3d 224 (2012); see id., 740 (declaratory judgment action to determine whether claimed injuries were covered by subject insurance policy).

Our Supreme Court has observed that "our declaratory judgment statute provides a valuable tool by which litigants may resolve uncertainty of legal obligation." (Internal quotation marks omitted.) Id., 747–48. The court also has recognized that "our declaratory judgment statute is unusually liberal. An action for declaratory judgment . . . is a statutory action as broad as it well could be made." (Internal quotation marks omitted.) Id., 748. The statute "is broader in scope than . . . the statutes in most, if not all, other jurisdictions . . . and [w]e have consistently construed our statute and the rules under it in a liberal spirit, in the belief that they serve a sound social purpose. . . . [Although] the declaratory judgment procedure may not be utilized merely to secure advice on the law . . . it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." Id.

In the present case, the trial court found that the issue to be decided was whether the defendants are shareholders of the plaintiff, and that the issue presents a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute, and is properly the subject of a claim for declaratory relief. Furthermore, all parties having an interest in the subject matter of the action are parties.

The court made the following findings of fact on the basis of the evidence it credited. The court credited the testimony of Veneziano's former wife, Donna McGuire, that the defendants are friends of Veneziano and that, for many years, she personally had possession of the original Certificate No. 2 on which the defendants' names appear. Certificate No. 2 for 300 shares is dated

May 1, 1998, and was placed into evidence. Although Certificate No. 2 is dated May 1, 1998, it was not issued until 2000. Veneziano gave McGuire Certificate No. 2 in the early 2000s and asked her to put it in her safe deposit box. McGuire held the certificate for quite a few years. The court found that Veneziano used McGuire's safe deposit box to hide the certificate there.

McGuire eventually gave Certificate No. 2 to Veneziano or to Justin Giroliman, an employee of the plaintiff. Giroliman later became the plaintiff's chief financial officer and senior vice president. Giroliman credibly testified that he possessed the certificate from 2010 to 2011, and that, at Veneziano's direction, kept it in his desk at the plaintiff's offices.

In addition to the evidence demonstrating that the defendants either relinquished or never possessed Certificate No. 2, in reaching its conclusion that the defendants were not shareholders of the plaintiff as of April, 1999, the court also relied on the fact that Ronald Garbus did not list an ownership interest in the plaintiff on Schedule B of his bankruptcy petition dated April 8, 1999. The court found that Ronald Garbus' deposition testimony in the present case and presented at trial was vague. He could not even recall when he filed a petition in bankruptcy. The court did not credit Ronald Garbus' testimony about being a shareholder. By contrast, the court found that Laurel Caliendo, the plaintiff's president, credibly testified that, as of November, 2007, the defendants were not shareholders of the plaintiff. Consequently, the court concluded that, although the defendants were listed as original shareholders of the plaintiff, their ownership interest was relinquished soon thereafter. The court also found that by asking his then wife to put Certificate No. 2 in her personal safe deposit box, and later by having Giroliman keep it in his desk, Veneziano kept the certificate secreted away for his later personal use.

The court was unpersuaded by the defendants' argument that they never relinquished their stock in exchange for their initial investment, but instead had received a $30,000 loan from the plaintiff, that they had executed a note and made payments to the plaintiff that are reflected in its records, and that all of this was authorized by Veneziano. Rather, the court found that Veneziano engaged in unauthorized conduct with the defendants in order to procure money for himself. The court concluded that any payments the defendants made did not establish that they were legitimate shareholders of the plaintiff.

Specifically, the court found that by the beginning of 2010, the defendants had paid $40,000, by personal checks, to the plaintiff, $10,000 of which was returned to the defendants. Although one of the checks the defendants sent to the plaintiff contained the words "loan repayment," the court found that Giroliman credibly

testified that the plaintiff had made no loan to the defendants. According to Giroliman, Veneziano directed him to record payments from the defendants initially as "Paid in Capital." Subsequently, at Veneziano's direction, Giroliman diverted the defendants' payments to Veneziano's personal account. By e-mail on December 30, 2011, Veneziano directed Giroliman that the defendants' payments should be posted: "against my advances 4 now." The court found that Veneziano's efforts to take the defendants' payments for himself also undermines the defendants' claims that they are lawful shareholders of the plaintiff.

In addition, the court found that the credibility of the defendants' claim of stock ownership was further undermined by Ronald Garbus' deposition testimony that he had a demand note with the plaintiff. The court found no credible evidence that a demand note ever existed, and that Ronald Garbus testified that he had no records with respect to the supposed demand note. The court also found no evidence of an agreement between Veneziano and the defendants concerning their purchase of shares in the plaintiff in 2010–2011 or afterward, or that Veneziano had actual authority to engage in such a transaction. "Actual authority exists when [an agent's] action [is] expressly authorized . . . or . . . although not authorized, [is] subsequently ratified by the [principal]." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 508, 4 A.3d 288 (2010).

The court credited Caliendo's testimony that the plaintiff had not authorized the sale of shares to the defendants during the relevant time period. The court found no evidence that the plaintiff's board of directors expressly or impliedly authorized Veneziano to issue shares to the defendants during that period of time or that the board of directors ratified such an action. The court concluded that there is no credible evidence that Veneziano had actual authority to issue shares of the plaintiff to the defendants during that time.

Although the plaintiff's allegation in paragraph 3 of its complaint that Certificate No. 2 apparently was returned to the defendants in June, 2011, amounts to an admission,[7] the court found no credible evidence that the defendants possessed Certificate No. 2 at the time of trial. The court found the clear explanation for the payments that the defendants made to the plaintiff to be that "Veneziano, either alone or in concert with the defendants, engaged in unauthorized conduct to get money from the defendants in exchange for providing [Certificate No. 2] to the defendants in order for them to appear to be legitimate stockholders."

At trial, the defendants argued in the alternative that Veneziano acted with the apparent authority of the plaintiff. In addressing this argument, the court first set forth the law of apparent authority. "[A]pparent

authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. . . . The issue of apparent authority is one of fact to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent permitted [the agent] to act as having such authority to the agent's action." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 508–509.

The trial court then found the defendants' apparent authority argument unpersuasive for several reasons. First, there was no evidence of a specific agreement between the defendants and Veneziano to either lend funds or to sell shares to the defendants in 2010–2011. In the absence of an agreement, the contention that Veneziano had apparent authority to make an agreement on behalf of the plaintiff is unavailing.

Second, the court found that the defendants failed to prove that Veneziano was acting with apparent authority to provide shares to them. Although there is evidence that Veneziano was listed as a "control person" of the plaintiff, that fact does not show that he apparently was authorized by the plaintiff to engage in stock transactions or to issue shares of stock. Third, the court found that there was no evidence showing that the defendants, acting in good faith, reasonably believed, under all of the circumstances, that Veneziano had the authority necessary to bind the plaintiff. Thus, the court concluded, the defendants had failed to prove their special defense concerning apparent authority, namely, that Veneziano had the apparent authority to execute a contract on the plaintiff's behalf concerning shares of stock in the plaintiff.

With respect to the first statute of limitations special defense pleaded by the defendants, § 52-577, the court found that the defendants appeared to base the special defense on the erroneous premise that the plaintiff's declaratory judgment action was, in fact, an action to collect on a note or one asserting fraud or statutory theft, or a civil conspiracy between Veneziano and the defendants for the defendants to acquire shares in the plaintiff for less than full value. The defendants contended that, because fraud and statutory theft are governed by the three year limitation period of § 52-577,[8] the plaintiff's action was time barred. The defendants

pleaded other statutes of limitations, such as General Statutes § 52-576, which provides a six year period for actions founded on contract.

The court recited: "[I]n analyzing whether a declaratory judgment action is barred by a particular statutory period of limitations, a court must examine the underlying claim or right on which the declaratory action is based."[9] *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992); id., 121–22 (declaratory judgment action challenging manner in which taxable real property was assessed was barred by statute of limitations). "[I]f a statute of limitations would have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action." Id., 116.

In contrast, the court explained that "an action for a declaratory judgment in this state should be subject to equitable defenses such as laches when the underlying cause of action on which it is based sounds in equity." *Caminis* v. *Troy*, 112 Conn. App. 546, 559–60, 963 A.2d 701 (2009), aff'd on other grounds, 300 Conn. 297, 12 A.3d 984 (2011); id., 548 (declaratory judgment action regarding littoral rights and property boundaries). In *Caminis*, this court cited with approval to *Plymouth* v. *Church-Dlugokenski*, 48 Conn. Supp. 481, 488 n.7, 852 A.2d 882 (2003), a declaratory judgment action to determine whether a bond referendum was valid, in which the Superior Court "determined that the defendant's counterclaim for a declaratory judgment was subject to laches because the ultimate remedy . . . sought, namely, to declare the referendum and approval of the bond issue void, was akin to that of an injunction and was quasi-equitable in nature." (Internal quotation marks omitted.) *Caminis* v. *Troy*, supra, 560.

The court in the present case found that the relief sought in the plaintiff's complaint is akin to that of an injunction, in that it seeks to prevent the defendants from acting as shareholders of the plaintiff with rights to own, to possess, and to vote the shares at issue. The court found that the complaint is not predicated on a note or a contract or on a conspiracy and does not plead the elements of fraud or statutory theft. The court, therefore, concluded that because the remedy the plaintiff sought is equitable in nature, the claim is subject to equitable defenses, but is not barred by the limitation periods set forth in § 52-577 and the other statutes of limitation alleged in the defendants' first special defense.

The court also addressed the defendants' remaining special defenses and found that they were unavailing.[10] Having found against the defendants with respect to the remainder of their special defenses, the court stated that it need not consider the legal issues raised by the plaintiff by way of avoidance and turned its attention

to the plaintiff's remedy.[11]

Noting again that a trial court has "wide discretion to render a declaratory judgment unless another form of action clearly affords a speedy remedy as effective, convenient, appropriate and complete"; *England* v. *Coventry*, 183 Conn. 362, 365, 439 A.2d 372 (1981); the court found that a declaratory judgment was warranted, as the plaintiff had proved that the defendants are not legitimate shareholders of the corporation.[12] The court concluded that a declaratory judgment is warranted, as no other remedy would be as effective, convenient, appropriate and complete. The court, therefore, rendered judgment declaring that the defendants are not lawfully shareholders of the plaintiff.[13] The defendants appealed.

The defendants' only claim on appeal is that the plaintiff alleged a claim of tortious financial misconduct and, therefore, the trial court improperly concluded that the declaratory judgment action was not barred by § 52-577.[14] We disagree.

"As an appellate court, our review of trial court decisions is limited to determining whether their legal conclusions are legally and logically correct, [and] supported by facts set out in the memorandum of decision." (Internal quotation marks omitted.) *New England Rock Services, Inc.* v. *Empire Paving, Inc.*, 53 Conn. App. 771, 775, 731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). The defendants' claim is circumscribed by the allegations of the plaintiff's complaint. "Pleadings have an essential purpose in the judicial process. . . . The purpose of pleadings is to apprise the court and opposing counsel of the issues to be tried. . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues set forth in the pleadings." (Internal quotation marks omitted.) *Kovacs Construction Corp.* v. *Water Pollution & Control Authority*, 120 Conn. App. 646, 659, 992 A.2d 1157, cert. denied, 297 Conn. 912, 995 A.2d 639 (2010). "Construction of pleadings is a question of law." Id. Our interpretation of a trial court's judgment also is a question of law subject to plenary review. See *Sosin* v. *Sosin*, 300 Conn. 205, 217, 14 A.3d 307 (2011).

The defendants contend that the underlying claim in the present declaratory judgment action is tortious financial misconduct to which § 52-577 applies. The plaintiff argues that its declaratory judgment action is equitable, in the nature of an injunction, and that it is not subject to or barred by a statute of limitations. We agree with the plaintiff.

"[I]n analyzing whether a declaratory judgment action is barred by a particular statutory period of limitations, a court must examine the underlying claim or right on which the declaratory action is based. . . . It necessarily follows that if a statute of limitations would

have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action." (Citations omitted; internal quotation marks omitted.) *Wilson* v. *Kelley*, supra, 224 Conn. 116.

Our plenary review of the plaintiff's complaint discloses the following allegations. The defendants were original owners of 300 shares of stock in the plaintiff in 1998, evidenced by Certificate No. 2, and, in that same year, they returned the certificate and were reimbursed their $30,000 investment. In June, 2011, stock Certificate No. 2 apparently was returned to the defendants in exchange for $30,000, without corporate authorization. The complaint further alleges that because the shares of stock were returned to the defendants without corporate authorization, the plaintiff contests whether the defendants are lawfully shareholders with rights to own, to possess, and to vote said stock. Importantly, the complaint does not allege that the defendants engaged in fraud, civil conspiracy, or other tortious financial misconduct. The complaint merely alleges that there is a bona fide dispute as to the defendants' ownership of shares of stock in the plaintiff.

The plaintiff raised the issue of the defendants' conduct by way of avoidance to the defendants' special defenses. By way of avoidance, the plaintiff alleged that the defendants conspired with Veneziano to avoid disclosure of their purported stock interest in the plaintiff to creditors and to the bankruptcy court in connection with a certain bankruptcy petition filed by one or both of the defendants. As a result of the aforesaid allegations, the plaintiff alleged that the defendants were estopped from asserting their special defenses.

At trial, the plaintiff presented evidence in support of its allegations in avoidance of the defendants' special defenses. The court, however, did not have to address those allegations because it found that the plaintiff had proved the allegations of its complaint and that the defendants had failed to prove their special defenses. As a consequence, not only did the plaintiff not allege that the defendants engaged in any tortious financial conduct with respect to the 300 shares of the plaintiff's stock, but also the trial court never found that the defendants engaged in such conduct.

On appeal, the defendants have ignored the plain language of the complaint and the court's specific findings. Rather, the defendants' appellate claim is predicated in large measure on the trial court's having taken judicial notice of *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 167 A.3d 430, cert. denied, 327 Conn. 957, 172 A.2d 205 (2017), in which Veneziano was found to have engaged in various acts of financial misconduct while he was president of the plaintiff. Id., 61. The defendants' reliance on the trial court's discussion of this court's decision in *Village Mortgage Co.* is mis-

placed. Our review of the court's memorandum of decision in the present case reveals that the court took judicial notice of the plaintiff's suit against Veneziano because the facts of that case related to the defendants' laches special defense.[15] In particular, the factual findings in *Village Mortgage Co.* explained how the plaintiff came to learn that Certificate No. 2 was returned to the defendants in 2011, how Veneziano acted without actual or apparent authority to issue the plaintiff's stock, and why the plaintiff did not delay unreasonably in bringing the present action. See *Village Mortgage Co.* v. *Veneziano*, supra, 65–66. The trial court in the present case made no finding that either of the defendants participated in any of Veneziano's misconduct.[16] Nevertheless, the defendants argue that the court, in its memorandum of decision, *implied* that the defendants conspired with Veneziano. We are not persuaded. Not only does the complaint fail to allege that the defendants conspired with Veneziano, but also, the court, in its memorandum of decision, does not imply that they did.

By taking judicial notice of the plaintiff's case against Veneziano, the court had an evidentiary basis on which to find facts that explained how Certificate No. 2 was returned to the defendants in 2011 and how the plaintiff learned of Veneziano's misconduct. Those facts also support the testimony of Giroliman and Caliendo, which the court credited, that Veneziano lacked actual or apparent authority to issue shares of stock to the defendants. Veneziano's financial misconduct and lack of authority were relevant to whether the defendants were lawfully shareholders in the plaintiff, regardless of whether they participated in Veneziano's misconduct.

Having reviewed the allegations of the complaint ourselves, we agree with the court's interpretation that the allegations are not predicated on a note or agreement and that the plaintiff did not plead the elements of fraud, statutory theft, or conspiracy. Although the defendants claim that the complaint alleges tortious financial misconduct on their part, they have not identified those allegations. The defendants have overlooked the fact that the complaint does not allege any wrongdoing against them. Furthermore, the plaintiff did not seek damages, but a judicial determination as to whether the defendants are lawfully shareholders of the plaintiff. The court was called on to resolve competing claims for 300 shares of the plaintiff's stock. The determination of who had the superior claim is inherently an equitable one, particularly where there is no claim or finding that any of the parties engaged in tortious financial misconduct or breached a contract. We therefore conclude that the trial court correctly determined that no statute of limitations applies to bar the plaintiff's declaratory judgment action, rather, that the special defense of laches applies and that the defendants failed to prove that special defense.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The cofounder was James Veneziano. See *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 167 A.3d 430, cert. denied, 327 Conn. 957, 172 A.2d 205 (2017).

[2] In their first special defense, the defendants alleged: "[I]n analyzing whether a declaratory judgment action is barred by a particular statutory period of limitations, a court must examine the underlying claim or right on which the declaratory action is based. . . . It necessarily follows that if a statute of limitations would have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action. (Internal quotation marks omitted.) *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 536–37, 754 A.2d 153 (2000), quoting *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992).

"General Statutes § 52-577 bars the plaintiff's action.

"General Statutes § 52-576 bars the plaintiff's action.

"General Statutes § 52-581 bars the plaintiff's action.

"General Statutes § 52-588 bars the plaintiff's action."

[3] The second special defense alleged: "1. The plaintiff's neglect or omission to assert [its] alleged right, taken in conjunction with lapse of time and other circumstances, causes prejudice to the defendant[s] so as to operate as a bar to relief in equity.

"2. Important documentary evidence is unavailable, has been wrongfully withheld or has been destroyed.

"3. The plaintiff inexcusably delayed in bringing [its] claim.

"4. The plaintiff's delay prejudiced the defendant in that records are lost or unavailable and witnesses' memories have deteriorated with time."

[4] The third special defense alleged: "1. Apparent authority is a doctrine developed by the courts to protect, under certain circumstances, persons dealing with an agent who lacks express authority.

"2. Apparent authority is the authorization which a principal, through his own acts or inadvertences, causes or allows a third person to believe his agent possesses.

"3. In the present case, the plaintiff [is] liable for its agreement with the defendant[s] on the ground that the agent, James Veneziano, had apparent authority to execute the contract on the plaintiff's behalf."

[5] The defendants did not attend the trial and did not present evidence to support their counsel's representation that they were not well enough to travel to Connecticut from Florida.

[6] Practice Book § 17-55 provides: "A declaratory judgment action may be maintained if all of the following conditions have been met:

"(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

"(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

"(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

[7] See *Ferreira* v. *Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001) (factual allegations in pleadings on which case is tried are judicial admissions and hence irrefutable as long as they remain in case).

[8] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[9] The purpose of a declaratory judgment action as authorized by § 52-29, "is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of *legal relations* between the parties." (Emphasis in original; internal quotation marks omitted.) *Wilson* v. *Kelley*, 224 Conn. 110, 115, 617 A.2d 433 (1992). "[D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (Internal quotation marks omitted.) Id., 115–16. "Implicit in these principles is the notion that a declaratory judgment action must rest on some cause of action that would be cognizable in a nondeclaratory suit."

Id., 116.

[10] Specifically, the court found that the defendants had not proven their special defense of laches and spoliation of evidence. On appeal, the defendants have not challenged the court's findings and conclusions as to laches and spoliation. We, therefore, need not address them.

[11] We agree that it was not necessary for the trial court to address the plaintiff's by way of avoidance pleading.

[12] The court found that Caliendo testified that the plaintiff was prepared to refund the net $30,000 received from the defendants if the court found that they were not lawfully shareholders. The plaintiff's counsel acknowledged at oral argument before this court that it is obligated to make the $30,000 payment to the defendants if the judgment of the trial court in the present action is affirmed.

[13] On February 13, 2019, the defendants filed a motion to reargue in which they contended that the court inconsistently applied the plaintiff's judicial admissions and shifted the burden of proof to the defendants to disprove the judicially admitted facts, and that the court should have applied § 52-577 to bar the plaintiff's claim. The plaintiff opposed the motion to reargue. On February 28, 2019, the court issued a memorandum of decision denying the defendants' motion to reargue. The defendants have not claimed on appeal that the court improperly denied their motion to reargue.

[14] In their brief, the defendants make certain representations of fact and argue that there is no support for several of the court's factual findings or that those findings are otherwise erroneous. The plaintiff argues that we should not consider those claims or arguments because the defendants did not include them in their statement of issues and they are inadequately briefed. We agree with the plaintiff. See Practice Book § 67-4; *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 300 n.9, 82 A.2d 703 (2004) (court refused to consider claims not identified as issues in either preliminary statement of issues or within statement of issues in brief); *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 179, 117 A.3d 876 (legal analysis rather than mere assertion required for issue to be adequately briefed), cert. denied, 318 Conn. 902, 122 A.3d 631 (2015), and cert. denied, 318 Conn. 902, 123 A.3d 882 (2015).

[15] It is well known that a court may take judicial notice of the file in another case, whether or not the other case is between the same parties. See, e.g., *Jewett* v. *Jewett*, 265 Conn. 669, 678 n.7, 830 A.2d 193 (2003). "[J]udicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed." (Internal quotation marks omitted.) Id.

[16] In the plaintiff's action against Veneziano, Veneziano was found liable for conversion, statutory theft, and embezzlement. See *Village Mortgage Co.* v. *Veneziano*, supra, 175 Conn. App. 61.