******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VINCENT P. LAROBINA *v.* ALTICE MEDIA SOLUTIONS, LLC
## (AC 46539)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

The plaintiff consumer appealed from the trial court's judgment for the defendant Internet and telephone service provider holding, inter alia, that the arbitration provision in the parties' agreement may be enforced by the defendant against the plaintiff. The plaintiff claimed, inter alia, that the court incorrectly concluded that his request for a declaratory judgment seeking to invalidate the "infinite arbitration clause" of the arbitration provision was nonjusticiable. *Held*:

Although the trial court properly concluded that the plaintiff's request for a declaratory judgment seeking to invalidate the infinite arbitration clause of the arbitration provision was nonjusticiable, the court should have dismissed, rather than denied, that claim because justiciability implicates the court's subject matter jurisdiction.

The trial court did not improperly conclude that there was neither fraud nor an absence of mutual assent with regard to the formation of the parties' agreement, as the plaintiff had notice of the arbitration provision in the agreement and a duty to read the agreement, which he did not do.

The trial court properly concluded that the arbitration provision was not procedurally unconscionable as applied to the underlying service dispute because the plaintiff presented no evidence of overreaching by the defendant, and he retained the ability not to accept or to terminate the agreement if the terms and conditions, including the arbitration provision, were unacceptable to him.

The trial court properly concluded that the arbitration provision was not substantively unconscionable, as the plaintiff was notified of the existence of the terms and conditions, the arbitration provision was not unreasonably favorable to the defendant, and it contained an opt-out provision and a severability clause.

Argued September 16—officially released December 24, 2024

*Procedural History*

Action seeking, inter alia, a declaratory judgment that the arbitration clause in a contract between the parties was illegal, invalid and unenforceable, and other relief, brought to the Superior Court in the judicial district of

Stamford-Norwalk and tried to the court, *Hon. Edward T. Krumeich II*, judge trial referee; judgment for the defendant, from which the plaintiff appealed to this court. *Improper form of judgment*; *reversed in part*; *judgment directed*.

*Vincent P. Larobina*, self-represented, the appellant (plaintiff).

*Thomas P. Lambert*, with whom, on the brief, was *Matthias J. Sportini*, for the appellee (defendant).

*Opinion*

MOLL, J. The self-represented plaintiff, Vincent P. Larobina, appeals from the judgment of the trial court, rendered after a bench trial, in favor of the defendant, Altice Media Solutions, LLC. On appeal, the plaintiff claims that the court incorrectly concluded that (1) his request for a declaratory judgment—to the extent it sought to invalidate the arbitration provision incorporated into his services agreement with the defendant on the basis that it contained an improper, so-called "infinite arbitration clause"—was nonjusticiable, (2) the services agreement was lawfully formed, and (3) insofar as the arbitration provision applied to the parties' underlying telephone service dispute, the provision was not unconscionable.[1] We disagree and, accordingly, affirm in part the judgment of the trial court; we reverse in part the judgment to correct its form.

The following facts, as set forth by the trial court or as are undisputed in the record, and procedural history are relevant to our resolution of this appeal. On April 9, 2021, the plaintiff accepted a promotional offer for Internet and telephone services from the defendant. The services agreement entered into by the parties contains an arbitration provision that was set forth in the

---

[1] We address the plaintiff's claims in a different order than they are set forth in his principal appellate brief.

general terms and conditions of service incorporated into the agreement (arbitration provision). The arbitration provision provides in relevant part: "Any and all disputes arising between [the plaintiff] and [the defendant], including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision. *This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to*: [c]laims arising out of or relating to any aspect of the relationship between [the parties], whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; [c]laims that arose before this or any prior [a]greement; and [*c*]*laims that may arise after the termination of this* [a]*greement.*" (Emphasis added.) The emphasized language reflects a so-called infinite arbitration clause.

"On April 23, 2021, the Internet service was installed, but the [landline] telephone service failed to function properly because the plaintiff could not receive incoming telephone calls. This problem persisted until October, 2021." As alleged by the plaintiff, "[f]rom April, 2021, through August, 2021, despite repeated demand, [the defendant] failed, neglected or refused to install operational telephone service to the plaintiff's residence. Nevertheless, [the defendant] deducted a monthly telephone charge from the plaintiff's credit card for the months of nonservice" (telephone service dispute).

In July, 2021, the plaintiff commenced a prior action against the defendant "seeking to compel [the defendant] to install the contracted telephone service . . . ." See *Larobina* v. *Altice Media Solutions, LLC*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-21-6053004-S (first action). Shortly thereafter, on November 9, 2021, the defendant filed a motion to

stay the proceedings in the first action and to compel arbitration pursuant to the arbitration provision. On November 19, 2021, the plaintiff withdrew the first action while the defendant's motion to stay and to compel arbitration was pending.

On November 15, 2021, shortly before withdrawing the first action, the plaintiff commenced against the defendant the present action, which is the subject of this appeal.[2] In his three count second amended complaint dated March 17, 2022 (operative complaint), the plaintiff sought a declaratory ruling that the arbitration provision was illegal, invalid, and unenforceable because it was procedurally and substantively unconscionable (count one). The plaintiff also sought a declaratory ruling that his claim pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as asserted in the first action, was not arbitrable (count two). Lastly, the plaintiff sought a declaratory ruling that the substance of the arbitration provision and the defendant's manner of delivery thereof to Connecticut consumers violated CUTPA (count three). On January 18, 2023, the defendant filed an answer denying the material allegations of the plaintiff's operative complaint.

On March 1, 2023, the matter was tried to the court, *Hon. Edward T. Krumeich II*, judge trial referee.[3] The

[2] On December 14, 2021, the defendant moved to stay the proceedings in the present action and to compel arbitration pursuant to the arbitration provision. On December 22, 2021, the plaintiff filed an objection. On January 24, 2022, the trial court, *Hon. Kenneth B. Povodator*, judge trial referee, denied the motion.

[3] On March 17, 2022, the plaintiff moved for summary judgment as to count one. On June 1, 2022, the defendant filed an objection. On December 22, 2022, the court, *Hon. Kenneth B. Povodator*, judge trial referee, denied the motion.

In addition, on April 18, 2022, the defendant filed a motion to dismiss count three and its corresponding demand for relief. On May 18, 2022, the plaintiff filed an objection. On August 31, 2022, the court, treating the defendant's motion as a motion to strike, granted in part the motion and struck the demand for injunctive relief sought in connection with count three.

court admitted into evidence several exhibits in full and heard testimony from the plaintiff and a corporate designee of the defendant. On May 4, 2023, the court issued a memorandum of decision denying the plaintiff's requests for declaratory relief in count one, holding that "the arbitration [provision] may be enforced by [the defendant] against [the plaintiff] . . . ."[4] Specifically, the court concluded that the plaintiff was on notice of the arbitration provision and assented to its terms when he agreed to accept the defendant's services and that "[t]here was no evidence of coercion, fraud or mistake . . . ."

Second, the court concluded that the arbitration provision, as applied to the telephone service dispute, was neither procedurally nor substantively unconscionable. In support of its conclusion that the arbitration provision was not procedurally unconscionable, the court found that, notwithstanding that the arbitration provision was a "classic contract of adhesion," the "plaintiff retained the ability to not accept or to terminate the order [for telephone services] if the disclosed terms were unacceptable" and the "arbitration [provision] should not have been a surprise." In support of its conclusion that the arbitration provision was not substantively unconscionable, the court found that "[t]he arbitration provision is mutual, and the terms are standard, not one-sided, and are amenable to an expeditious, nonjudicial, alternate resolution of the matters in dispute." In this connection, the court also noted the fact that there was a thirty day opt-out provision and a severability clause.

Lastly, the court addressed the plaintiff's claim challenging the arbitration provision's inclusion of "an 'infinite arbitration clause' condemned by various judges

---

[4] Additionally, in a footnote, the court denied the plaintiff's requests for declaratory relief in counts two and three, concluding that the plaintiff's CUTPA claims were arbitrable. The plaintiff does not challenge those particular conclusions on appeal.

and legal scholars because its scope exceed[ed] the agreement in which it is contained . . . ." The court noted that the plaintiff was seeking "a declaration that the 'infinite arbitration clause' in the general terms and conditions could never be enforced because it [was], by its terms, overbroad and, if enforced, literally . . . would apply to disputes that have no connection with his [services] agreement with [the defendant] or with those persons and entities with whom he dealt in connection with his subscription." The court determined that this particular request for declaratory relief was nonjusticiable, stating that "[t]he court will not render an advisory opinion on hypothetical situations where the 'infinite arbitration clause' might not be enforced and to issues on which the plaintiff would lack standing. There is an actual dispute between the parties that is justiciable concerning the offer accepted by the plaintiff and the services provided to the plaintiff pursuant to the service[s] [agreement] that incorporated the arbitration [provision]. The only question on which this court may render a declaratory judgment is whether the present dispute between the parties may be arbitrated pursuant to the arbitration [provision] in the general terms and conditions, which the court answers affirmatively in denying the plaintiff's request for a declaration [that] the arbitration [provision] is unenforceable against him." This appeal followed. Additional facts and procedural history will be provided as necessary.

I

We construe the plaintiff's principal claim on appeal to be that the trial court improperly concluded that his request for a declaratory judgment seeking to invalidate the infinite arbitration clause of the arbitration provision was nonjusticiable. In connection with this claim, the plaintiff contends that "an active justiciable dispute"

arose as soon as the defendant disagreed with the plaintiff's assertion that the arbitration provision was "illegal and against public policy." We disagree.

The following legal principles and standard of review govern our resolution of this claim. "The [declaratory judgment] procedure has the distinct advantage of affording to the court in granting any relief consequential to its determination of rights the opportunity of tailoring that relief to the particular circumstances. . . . A declaratory judgment action is not, however, a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies. . . . A court will not resolve a claimed controversy on the merits unless it is satisfied that the controversy is justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . As we have recognized, justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . Finally, because an issue regarding justiciability raises a question of law, our appellate review is plenary."[5] (Citations omitted; internal quotation marks omitted.) *Shenkman-Tyler* v. *Central Mutual Ins. Co.*, 126 Conn. App. 733, 738–39, 12 A.3d 613 (2011); see also Practice Book § 17-55.

"In light of the rationale of the ripeness requirement, to prevent the courts, through avoidance of premature

---

[5] "A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction." (Internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358, 258 A.3d 71 (2021).

adjudication, from entangling themselves in abstract disagreements . . . we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Citation omitted; internal quotation marks omitted.) *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003).

Additionally, "[i]t is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. . . . The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do not support them. . . . Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 578–80, 668 A.2d 688 (1995).

"In deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination regarding [the complaint's] merits. Rather, we consider only whether the matter in controversy [is] capable of

being adjudicated by judicial power according to the aforestated well established principles." (Internal quotation marks omitted.) *Schoenhorn* v. *Moss*, 347 Conn. 501, 508, 298 A.3d 236 (2023).

In the present action, the plaintiff seeks a declaratory ruling that if, in the future, he suffers harm at the hands of the defendant that has no nexus with the Internet and telephone services provided by the defendant, the arbitration provision is unenforceable as to any resulting claim. The fundamental flaw with the plaintiff's request for declaratory relief in this regard, however, is that it hinges entirely on "a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 626. A ruling on such request would result in a judgment that is purely advisory in nature. See *Village Mortgage Co.* v. *Garbus*, 201 Conn. App. 845, 851, 244 A.3d 952 (2020) ("the declaratory judgment procedure may not be utilized merely to secure advice on the law" (internal quotation marks omitted)). Simply put, because the plaintiff has not alleged harm caused by the defendant other than that underlying the telephone service dispute, his request for a declaratory judgment seeking to invalidate the infinite arbitration clause, which by its terms does not apply to the telephone service dispute, is not justiciable.

The plaintiff claims that a dispute between the parties as to the validity of the infinite arbitration clause renders this claim justiciable. The plaintiff's argument is untenable, however, because it ignores the justiciability requirements discussed previously in this opinion, as well as the related doctrines of standing and ripeness, which require actual aggrievement of the complaining party. See *Steeneck* v. *University of Bridgeport*, supra,

235 Conn. 578–80 (discussing standing); see also *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 626 (discussing ripeness).

In sum, the court properly concluded that the plaintiff's request for declaratory relief regarding the enforceability of the infinite arbitration clause was nonjusticiable. Nevertheless, because justiciability implicates the court's subject matter jurisdiction, the court should have dismissed, as opposed to have denied, this claim (i.e., that portion of count one). See *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358, 258 A.3d 71 (2021).

## II

The plaintiff also claims that the court erred in concluding that the parties' services agreement incorporating the arbitration provision was lawfully formed. Specifically, the plaintiff contends that the services agreement is not enforceable because of fraud and a lack of mutual assent. We disagree.

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454, 889 A.2d 850 (2006).

"In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . Meeting of the minds is defined as mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation." (Internal quotation marks omitted.) *Krasko* v. *Konkos*, 224 Conn. App. 589, 605, 314 A.3d 34 (2024).

"The general rule is that where a person [who is] of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so. . . . This rule is qualified by the intervention of fraud, artifice or mistake not due to negligence. . . . The rule applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off . . . guard in the matter." (Citation omitted; internal quotation marks omitted.) *Abele Tractor & Equipment Co.* v. *Sono Stone & Gravel, LLC*, 151 Conn. App. 486, 506, 95 A.3d 1184 (2014). "A fraudulent representation in law is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it."

(Internal quotation marks omitted.) *Smith* v. *Frank,* 165 Conn. 200, 202, 332 A.2d 76 (1973).

In the present action, the court determined that "[t]here was no evidence of coercion, fraud or mistake here. The plaintiff was repeatedly presented with written notice of the general terms and conditions that applied to the services provided to him by [the defendant], which he refused to read. The order pages on the website related to the offer the plaintiff accepted indicated that by accepting the services, the plaintiff was also accepting the terms of service. The plaintiff assented to these terms when he accepted the offer online. No written signature or checked box was required to accept the terms of service online. . . . Where the parties execute a contract which refers to another instrument in such a manner to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties. . . . Here, the general terms and conditions were linked by hyperlink to the page in which the plaintiff accepted the services offered, they were available for review before acceptance of the service[s] and installation, and he was bound by the disclosed terms under which the offer was made and the services provided.

"No facts have been presented that suggest fraud, artifice, mistake, or coercion that could be attributed to [the defendant]. The plaintiff assumed, because there was no annual contract and he was billed monthly, no additional terms applied, despite repeated written and verbal reminders there were additional terms and conditions to the services ordered by the plaintiff. It was unreasonable for the plaintiff to assume no additional terms and conditions applied; his failure to use available means to discover the general terms and conditions is inexcusable. Knowledge of the general terms and

conditions are properly imputed to the plaintiff, including the arbitration [provision], upon his acceptance of the written offer." (Citations omitted; footnote omitted; internal quotation marks omitted.) In a footnote, the court further stated that "[t]he plaintiff argues that he was misled into believing that there was no contract by the promotional material's statement that there was 'no annual contract.' That statement was true; there was no annual contract and either party could terminate the month-to-month agreement for services at any time."

In arguing that the court's factual findings regarding fraud and mutual assent were erroneous, the plaintiff maintains that (1) the defendant represented that (a) there was "no annual contract" involved and (b) the contract offered by the defendant was for telephone service, and (2) the defendant falsely made those representations because of the inclusion of the arbitration provision, which was "infinite" in nature and extended to matters beyond Internet and telephone services. These assertions are unavailing, however, in light of the court's findings, as supported by the record, that the plaintiff had notice of the arbitration provision. Specifically, the court found that the plaintiff was notified, in person, of the existence of the general terms and conditions, which contained the arbitration provision, during an installation appointment and that the plaintiff agreed to continue with the installation and contracting for services despite that notice. The testimony of the plaintiff supported this finding, as he stated that he was presented with the hyperlink to the general terms and conditions of his services agreement with the defendant, which contained the arbitration provision, in various email communications from the defendant before the telephone service was installed. The record also contains documentary evidence of such warnings and disclaimers regarding the general terms and conditions.

Moreover, the plaintiff testified that, despite the notices provided by the defendant, he did not read the warnings and did not follow the hyperlink that would have led him to the terms and conditions because he "believe[d] this wasn't germane to [him] . . . ." Thus, the record supports the court's determination that there was no fraud or mistake during the formation of the contract, and, therefore, the plaintiff had a duty to read the contract. See *Phoenix Leasing, Inc.* v. *Kosinski*, 47 Conn. App. 650, 654–55, 707 A.2d 314 (1998) ("There was no evidence of coercion, fraud or mistake. Thus, the [contracting party] had a duty to read the [contract] and cannot now plead his self-induced ignorance of its contents.").

In sum, we reject the plaintiff's claims that the court improperly concluded that there was neither fraud nor an absence of mutual assent vis-à-vis the formation of the parties' services agreement.

### III

The plaintiff also claims that the trial court improperly held that the arbitration provision was neither procedurally nor substantively unconscionable. We conclude that the court properly determined that the arbitration provision, as applied to the plaintiff's underlying telephone service dispute with the defendant, was not procedurally or substantively unconscionable.[6]

---

[6] The plaintiff takes the position on appeal that the telephone service dispute is not the subject of this appeal and that he is contending that the infinite arbitration clause renders the arbitration provision, as a whole, unenforceable. The operative complaint requested in relevant part "[a] declaratory judgment that [the defendant's] arbitration clause is procedurally and/or substantively unconscionable, unlawful, unenforceable and/or otherwise void *in connection with the plaintiff's underlying dispute with* [*the defendant*]." (Emphasis added.) Thus, the court properly construed the plaintiff's claims to encompass a challenge to the arbitrability of the underlying telephone service dispute in the present action. Moreover, we conclude that the plaintiff's claim of unconscionability on appeal encompasses the arbitration provision as applied to the underlying telephone service dispute.

We begin by setting forth the applicable standard of review and relevant legal principles. "It is well established that [t]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Thus, our review on appeal is unlimited by the clearly erroneous [or abuse of discretion] standard. . . . This means that the ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and that the trial court's determination on that issue is subject to a plenary review on appeal. . . . It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous. . . .

"The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. . . . The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Citations omitted; internal quotation marks omitted.) *R. F. Daddario & Sons, Inc.* v. *Shelansky*, 123 Conn. App. 725, 740–41, 3 A.3d 957 (2010). "In practice, we have come to divide this definition into two aspects of unconscionability, one procedural and the other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression." *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349, 721 A.2d 1187 (1998).

A

The plaintiff first contends that the arbitration provision was procedurally unconscionable because it is a contract of adhesion, which, in some jurisdictions, constitutes procedural unconscionability. In connection with his first claim, the plaintiff also argues that the defendant "wilfully deceives consumers by soliciting business by proclaiming in banner print 'no annual contracts' " while also imposing the arbitration provision in the general terms and conditions. Lastly, the plaintiff contends that the opt-out provision in the arbitration provision was "inherently confusing and is intended to cause confusion." The defendant argues that the court properly concluded that the arbitration provision was not procedurally unconscionable, as the plaintiff presented no evidence of overreaching by the defendant. We agree with the defendant.

Procedural unconscionability may be found "where bargaining or contractual improprieties were committed . . . ." *Rockstone Capital, LLC* v. *Caldwell*, 206 Conn. App. 801, 813, 261 A.3d 1171, cert. denied, 339 Conn. 914, 262 A.3d 136 (2021); see also *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 29, 191 A.3d 212 (2018) (reversing trial court's finding that agreement was procedurally unconscionable because contracting party was provided "reasonable notice" and evidence did not reveal that contracting party "had no meaningful choice whether to select the plaintiff as the provider" of services); *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, 70 Conn. App. 60, 70, 797 A.2d 1165 (2002) ("we know of no case . . . in which a party may invoke unconscionability without a showing of some kind of relevant misconduct by the party seeking enforcement of a contract"). Additionally, we note that principles of unconscionability do not negate "the duty of a contracting party to read the terms of an agreement or else be deemed to have notice of the

terms." *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 351–52; see also *Rockstone Capital, LLC* v. *Caldwell*, supra, 812 ("a contracting party's negligent failure to read and understand an agreement has consistently been rejected as an unconscionability defense to contract enforcement").

In the present case, the plaintiff retained the ability not to accept or to terminate the agreement for telephone service if the general terms and conditions, including the arbitration provision, were unacceptable to him. Moreover, there was no unfair surprise about the existence of the arbitration provision, as the court found that the "plaintiff was on notice that the Internet [and telephone] services agreement was subject to the terms and conditions that were available for his review and that by accepting the services offered he was agreeing to the general terms and conditions." See *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 349. The court explicitly found that the plaintiff "was repeatedly notified there were conditions that applied to his service[s] arrangement with [the defendant] and he was provided the hyperlinks necessary to access the general terms and conditions, including the arbitration [provision], but he failed to read the notices or follow the hyperlinks." The promotional materials the plaintiff received, which induced him to contract for telephone service with the defendant, all described the terms of the offer and explicitly warned that "[o]ther terms and conditions apply . . . ." Similar language appeared in the plaintiff's order confirmation for enrolling in autopay.

The plaintiff did not present any evidence of "bargaining or contractual improprieties"; *Rockstone Capital, LLC* v. *Caldwell*, supra, 206 Conn. App. 813; or "misconduct"; *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, supra, 70 Conn. App. 70; nor did he present evidence that he "had no meaningful choice

whether to select the [defendant] as the provider" of telephone service. *Emeritus Senior Living* v. *Lepore*, supra, 183 Conn. App. 29. Although the plaintiff testified that he chose not to read the general terms and conditions, which contained the arbitration provision, a "negligent failure to read and understand [the] agreement has consistently been rejected as an unconscionability defense to contract enforcement." *Rockstone Capital, LLC* v. *Caldwell*, supra, 812.

In sum, we conclude that the court properly determined that the arbitration provision was not procedurally unconscionable as applied to the underlying telephone service dispute.

B

The plaintiff next contends that the arbitration provision was substantively unconscionable because it "completely favors [the defendant] . . . ." In connection with this claim, the plaintiff asserts that the arbitration provision (1) transcends the contract, (2) violates public policy, (3) contains illusory terms, (4) contains one-sided provisions, (5) gives the defendant the power to create the rules of arbitration, (6) includes waivers as to jury trials, class actions, and private attorney general actions, (7) covers a "constellation of nonparty beneficiaries, unconnected to the contracted telecommunication services," and (8) is ambiguous. The defendant argues that the arbitration provision was not substantively unconscionable because (1) the plaintiff was notified of the existence of the terms and conditions, (2) the arbitration provision was "not unfair so as to make it substantively unconscionable," and (3) the court can sever portions of the agreement that are deemed to be unconscionable. We agree with the defendant.

Substantive unconscionability is slightly different from procedural unconscionability, as it "focuses on the content of the contract . . . . That is, whether the

contract terms . . . are unreasonably favorable to the other party . . . . In general, the basic test is whether, in the light of the general . . . background and the . . . needs of the particular . . . case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." (Citations omitted; internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 214 Conn. App. 831, 842, 282 A.3d 517, cert. denied, 345 Conn. 960, 285 A.3d 52 (2022).

In the present case, the arbitration provision is not "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract," nor is the provision "unreasonably favorable" to the defendant; (internal quotation marks omitted) id.; because, as noted by the court, "[t]he arbitration provision is mutual" and both sides are bound to arbitrate any covered disputes between the parties. Moreover, in concluding that the provision was not substantively unconscionable, the court correctly considered the opt-out provision, which permitted a new subscriber an opportunity to opt out of the arbitration agreement within thirty days from the effective date of the agreement.[7] The court also properly considered the severability clause, which provides in relevant part: "If any other portion of this arbitration provision is determined to be unenforceable, then the remainder of this arbitration provision shall be given full force and effect." These two provisions further bolster our conclusion that the

---

[7] The plaintiff claims that the opt-out provision is confusing and illusory. We disagree, as the plain language of the provision indicates that a subscriber has thirty days to opt out of the arbitration provision. The opt-out provision also gives clear instructions to the subscriber on how to opt out of the arbitration provision, which could be done via email or mail to the defendant. Moreover, despite the plaintiff's claim that the opt-out provision was "concealed," the plaintiff could have discovered the opt-out provision, which is written in capital and bold letters, if he had clicked on the hyperlink to the general terms and conditions.

agreement was not so one-sided as to be unconsciona-ble, nor unreasonably favorable to the defendant, because (1) the plaintiff had the power to opt out of the agreement within thirty days and (2) in the event that any portions are determined to be unconscionable, the court can sever such portions from the remainder of the agreement.

In sum, we conclude that the court properly deter-mined that the arbitration provision was not substan-tively unconscionable as applied to the underlying tele-phone service dispute.

The form of the judgment with respect to the plain-tiff's claim for a declaratory ruling pertaining to the infinite arbitration clause is improper, the judgment is reversed only as to that claim and the case is remanded with direction to render judgment dismissing that claim; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.