******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROCKSTONE CAPITAL, LLC *v.* MORGAN J.
CALDWELL, JR., ET AL.
(AC 43653)

Elgo, Cradle and DiPentima, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property that
was jointly owned by the defendants, C and D, who were domestic
partners. The plaintiff purchased a line of credit that had been extended
to C's business, W Co., and guaranteed by C. After the plaintiff brought
a collections action against W Co. and C for nonpayment, the plaintiff,
W Co., C and D entered into a settlement agreement in which, inter alia,
the plaintiff agreed to forbear litigation and reduce the total amount of
the indebtedness owed in exchange for W Co.'s and C's agreement to
waive all defenses they had with respect to the agreement and to make
regular payments on the debt. D guaranteed payment of the sums due
under the settlement agreement on a nonrecourse basis, and C and D
granted the plaintiff a mortgage against their respective interests in their
residence to secure their obligations under the settlement agreement.
After W Co. and C defaulted on their payment obligations, the plaintiff
declared the entire outstanding balance immediately due and payable
and brought a foreclosure action against the real property. C and D
each pleaded separate special defenses. D claimed that she did not read
the settlement agreement prior to executing the document and that she
was not represented by counsel in connection with the same. The trial
court granted the plaintiff's motion to strike C's special defenses but
denied the plaintiff's motion with respect to D's special defenses. Follow-
ing a bench trial, the trial court rendered a judgment of strict foreclosure
in favor of the plaintiff against C but determined that, with respect to
D, the settlement agreement was unconscionable and unenforceable.
The trial court explained that the settlement agreement was both proce-
durally and substantively unconscionable as to D due to, inter alia,
the rushed nature of the closing, her lack of business acumen, her
unawareness of the terms of the agreement, a lack of consideration,
and the overly harsh terms of the agreement. On the plaintiff's appeal
to this court, *held* that the trial court improperly concluded that the
settlement agreement was procedurally and substantively unconsciona-
ble as to D; the court's findings with respect to the contract formation
process failed to support a legal conclusion of procedural unconsciona-
bility because there was no language barrier between the parties, D had
entered into a prior mortgage and, as a result, had some familiarity with
mortgage documents, D's education level and business sophistication
were immaterial, as she did not argue that the settlement agreement
was ambiguous or exceedingly complicated and her surprise regarding
the contract terms derived solely from her failure to read the agreement,
and the court did not find that the plaintiff was responsible for any
misconduct during the contract formation process, as it did not mislead
or take advantage of D; moreover, the trial court's conclusion that the
settlement agreement was substantively unconscionable because D did
not receive any direct consideration in exchange for her agreement to
mortgage her interest in her residence was clearly erroneous, as, even
though D was not previously obligated to pay the debts of C or W Co.,
she received consideration for her guarantee because, if the settlement
agreement had been honored, she would have avoided having to share
title to her home with the plaintiff and she incurred the liability so that
C could receive the direct benefit of forbearing litigation and reducing
his total indebtedness; accordingly, the judgment with respect to D was
reversed and the case was remanded with direction to render a judgment
of strict foreclosure against D.

Argued May 17—officially released August 24, 2021

*Procedural History*

Action to foreclose a mortgage on certain real prop-

erty owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Lee, J.*, granted the plaintiff's motion to strike the named defendant's special defenses and denied the plaintiff's motion to strike the special defenses of the defendant Vicki A. Ditri; thereafter, the matter was tried to the court, *Lee, J.*; judgment of strict foreclosure against the named defendant, from which the plaintiff appealed to this court. *Reversed in part*; *judgment directed*.

*Deborah L. Dorio*, with whom, on the brief, was *Michael A. Pease*, for the appellant (plaintiff).

*Sophie Laing*, certified legal intern, with whom were *Jeffrey Gentes*, and, on the brief, *J. L. Pottenger, Jr.*, and *Chaarushena Deb* and *Zaria Noble*, certified legal interns, for the appellee (defendant Vicki A. Ditri).

*Opinion*

CRADLE, J. In this strict foreclosure action, we consider the enforceability of a settlement and forbearance agreement (settlement agreement) entered into by the plaintiff, Rockstone Capital, LLC, the defendants, Vicki A. Ditri and Morgan J. Caldwell, Jr., and Caldwell's business, Wesconn Automotive Center, LLC (Wesconn), that resulted from a collections action brought by the plaintiff against Caldwell and Wesconn.[1] The plaintiff appeals from the judgment of the trial court, rendered after a court trial, in favor of the defendant, on her special defense that the settlement agreement was unconscionable and, therefore, unenforceable. On appeal, the plaintiff contends that the trial court improperly concluded that the settlement agreement was both procedurally and substantively unconscionable as to the defendant. We agree and, accordingly, reverse in part the judgment of the trial court.[2]

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The defendant and Caldwell have been in an intimate relationship for more than twenty-eight years. Since the 1990s, they have jointly owned and lived in a residence located at 11 Devon Avenue in Norwalk (Devon Avenue property). In August, 2003, Wesconn[3] obtained a line of credit with Fleet National Bank, now Bank of America, N.A., in the initial amount of $27,000, which amount was later increased to $75,000.[4] Caldwell executed a personal guarantee of payment and performance of the credit line. On December 14, 2004, Fleet National Bank issued an additional $5400 to Wesconn, and Caldwell again executed a guarantee of payment and performance.

The plaintiff purchased Wesconn's line of credit and Caldwell's guarantees from Bank of America, N.A., in 2006, and was assigned all rights to the debts. In 2007, the plaintiff brought a collections action against Wesconn and Caldwell, alleging nonpayment of principal and interest. To resolve the action, the plaintiff, Wesconn, Caldwell, and the defendant[5] entered into the settlement agreement on August 31, 2010.[6] The settlement agreement provided generally that Caldwell and Wesconn would agree to waive all defenses with respect to the agreement and would make regular payments in exchange for the plaintiff's offer to forbear litigation and reduce the total amount of indebtedness. To secure the obligations under the settlement agreement, Caldwell and the defendant granted the plaintiff an open-end mortgage against their respective interests in the Devon Avenue property. The defendant has never had any personal liability for the debt, beyond her interest in the Devon Avenue property.[7]

On the day of closing, and at Caldwell's behest, the defendant traveled to the office of Caldwell's attorneys

during her lunch break to execute the settlement agreement. Prior to signing, Caldwell had not informed the defendant of the nature of the agreement and had simply asked her to "sign some papers." The defendant had not spoken with Caldwell's attorneys before the closing date and was not provided an advance copy of the settlement agreement. At the signing, the defendant was unrepresented by counsel, and neither Caldwell nor his attorneys explained to the defendant what the settlement agreement or mortgage entailed. The settlement agreement was opened to the signature page when the defendant arrived, and she did not read the other pages before signing it. The plaintiff was not present at the closing.

Wesconn and Caldwell subsequently defaulted on the amounts owed under the settlement agreement and the plaintiff exercised its option to declare the entire balance immediately due and payable. The plaintiff then filed the present action on April 26, 2018, seeking to foreclose the mortgage on the Devon Avenue property. Caldwell and the defendant, each self-represented, filed individual appearances and pleaded separate special defenses.[8] In her answer, the defendant alleged the following special defense: "I Vicki Ditri was not involved in Wesconn Auto [and] Tire. Maria Janice Lawrence stole money from Wesconn Tire [and] Auto, she got arrested. Next thing I know I have to go to a lawyer's office (not my lawyer I was not [i]nvolved), to sign papers which I never read and was not represented by a lawyer. I would never agree to [forbearance] (which I just learned what that means!)."

On June 14, 2018, the plaintiff filed motions to strike both Caldwell's and the defendant's special defenses on the ground that they were legally insufficient because they did not "relate to the making of the debt obligation . . . ." The trial court, *Lee*, *J.*, granted the motion to strike Caldwell's special defense but denied the motion as to the defendant's special defense.

A bench trial was held on July 16, 2019. On November 7, 2019, the trial court, *Lee*, *J.*, issued its memorandum of decision. The court determined that the plaintiff had established a prima facie case of mortgage foreclosure and rendered a judgment of strict foreclosure in favor of the plaintiff against Caldwell.[9] With regard to the defendant, however, the court held that the settlement agreement was unconscionable and, consequently, unenforceable. Specifically, the court explained, inter alia, that the rushed nature of the closing, the defendant's lack of business acumen, and the "overly harsh" terms of the settlement agreement rendered the agreement both procedurally and substantively unconscionable.

On December 27, 2019, the plaintiff filed a motion for articulation seeking articulation on five points.[10] The trial court, *Lee*, *J.*, responded to the plaintiff's

motion for articulation, explaining, inter alia, that the "conduct of the closing of the underlying settlement agreement and its provisions, pursuant to which [the defendant] agreed to a mortgage securing . . . Caldwell's obligations, despite having no liability herself, and being unaware of the contents or effect of the document she was signing" militated a determination of unconscionability. The plaintiff's motion for further articulation was denied. This appeal followed.

The plaintiff claims that the trial court erred in concluding that the settlement agreement was both procedurally and substantively unconscionable as to the defendant. We agree with the plaintiff.

The following legal principles guide our analysis of the plaintiff's claim on appeal. "We first note that the defense of unconscionability is a recognized defense to a foreclosure action. . . . The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, [t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Citations omitted; internal quotation marks omitted.) *Hirsch* v. *Woermer*, 184 Conn. App. 583, 588–89, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018).

In practice, we have divided claims of unconscionability into two categories—one substantive and the other procedural. "Substantive unconscionability focuses on the content of the contract, as distinguished from procedural unconscionability, which focuses on the process by which the allegedly offensive terms found their way into the agreement." (Internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 87 n.14, 612 A.2d 1130 (1992), quoting J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 9-37, p. 399. Procedural unconscionability is intended to prevent unfair surprise and substantive unconscionability is intended to prevent oppression. *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349, 721 A.2d 1187 (1998).

"The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an

absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . .” (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, supra, 184 Conn. App. 589–90, quoting *R. F. Daddario & Sons, Inc.* v. *Shelansky*, 123 Conn. App. 725, 741, 3 A.3d 957 (2010); see also *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 29, 191 A.3d 212 (2018).

“[T]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case.” *Iamartino* v. *Avallone*, 2 Conn. App. 119, 125, 477 A.2d 124, cert. denied, 194 Conn. 802, 478 A.2d 1025 (1984). “[O]ur review on appeal is unlimited by the clearly erroneous standard. . . . [T]he ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and . . . the trial court’s determination on that issue is subject to a plenary review on appeal. It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous.” (Citations omitted; internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 88. With the foregoing principles in mind, we turn to the plaintiff’s claim on appeal.

The plaintiff first argues that the trial court improperly concluded that the settlement agreement was procedurally unconscionable as to the defendant. Specifically, the plaintiff claims that the trial court’s findings pertaining to the contract formation process fail to support a legal conclusion of procedural unconscionability.[11] We agree.

Our Supreme Court has considered various factors in engaging in procedural unconscionability analyses, including the contracting party’s business acumen, the party’s awareness of material preconditions to the contract, whether the party was represented by counsel during the transaction period, and the existence of a language barrier between the contracting parties. See id., 89–91. In addition, this court has considered the contracting party’s level of education, the party’s ability to read and understand the agreement at issue, and the reasonableness of the party’s expectation to fulfill the contractual obligations. *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 763–64, 677 A.2d 479 (1996). We have also assessed the conduct of the parties during the contract’s formation, focusing on the process by which the allegedly unconscionable terms found their way into the agreement. Id. (concluding that loan agreement was procedurally unconscionable where plaintiff’s attorneys rushed unrepresented defendant into signing, failed to disclose identities of true lenders, and withheld material term until closing).

In the present case, the trial court found that the defendant lacked business acumen; the closing was rushed because the defendant was on her lunch break; the defendant was unrepresented at the closing; neither Caldwell nor Caldwell's attorneys explained the settlement agreement or the mortgage to the defendant; and the documents for the defendant to sign were folded back so that only the signature page was exposed. We conclude that these findings are insufficient to render the settlement agreement procedurally unconscionable.

As an initial matter, the trial court did not find that either the defendant or Caldwell had an unreasonable expectation in fulfilling their obligations under the settlement agreement. Put another way, the court did not find that Caldwell's financial situation made it apparent that he could not reasonably expect to make the scheduled payments, or that the plaintiff entered the agreement simply to reap the equity in the Devon Avenue property. Likewise, the trial court did not find that the defendant experienced difficulty speaking or understanding English. Accordingly, there was no language barrier that prevented her from comprehending the settlement agreement. Although the trial court found that the defendant was an unsophisticated party, that finding is discounted due to the fact that she had entered into a prior mortgage agreement and, therefore, had some familiarity with mortgage documents. See *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 90–91 (trial court's finding that defendants had entered into prior mortgage transaction undermined defendants' argument that they lacked business acumen).

Additionally, the defendant's level of education or business sophistication is largely immaterial to the particular circumstances in the present case. The defendant does not argue that the settlement agreement was ambiguous or exceedingly complicated. Rather, her alleged surprise regarding the contractual terms derives from her failure to read the agreement. Where a party does not attempt to understand its contractual obligations before signing, considerations such as education level, business acumen, and complexity of the contractual language become less relevant to our analysis. Indeed, a contracting party's negligent failure to read and understand an agreement has consistently been rejected as an unconscionability defense to contract enforcement. *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 351–52 ("[w]e have never held that principles of unconscionability supersede, in toto, the duty of a contracting party to read the terms of an agreement or else be deemed to have notice of the terms"); *Emeritus Senior Living* v. *Lepore*, supra, 183 Conn. App. 30 n.5 ("The defendant's purported ignorance [with regard to understanding that signing an assisted living residency agreement as her mother's representative would make her personally lia-

ble to the plaintiff] . . . does not lead us to conclude that the formation of the agreement was procedurally unconscionable. The defendant had an obligation to read the agreement . . . and understand it before signing." (Citation omitted.)); see also *Ursini* v. *Goldman*, 118 Conn. 554, 562, 173 A. 789 (1934) ("where a person of mature years and who can read and write, signs or accepts a formal written contract affecting [her] . . . interests, it is [her] duty to read it and notice of its contents will be imputed to [her] if [she] negligently fails to do so").

Moreover, our court has limited determinations of procedural unconscionability to cases where bargaining or contractual improprieties were committed by the plaintiff. *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, 70 Conn. App. 60, 70, 797 A.2d 1165 (2002) ("we know of no case . . . in which a party may invoke unconscionability without a showing of some kind of relevant misconduct by the party seeking enforcement of a contract"); see also *Emeritus Senior Living* v. *Lepore*, supra, 183 Conn. App. 29–30 and n.5 (rejecting claim of procedural unconscionability where defendant had not presented any evidence that demonstrated that *plaintiff* had prevented her from reading or understanding agreement).

Where the claim of unconscionability is directed at the actions and representations of third parties, rather than the plaintiff, we have required that an agency relationship exist between the plaintiff and the third party.[12] *Bank of America, N.A.* v. *Gonzalez*, 187 Conn. App. 511, 522 n.9, 202 A.3d 1092 (2019) ("[b]ecause the defendant did not establish that [the third party] was an agent or employee of [the plaintiff's predecessor in interest], the court correctly concluded that the defendant could not prevail on his special defense of unconscionability"); *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 192, 81 A.3d 1189 (2013) ("existence of an agency relationship is critical to the viability of the defendants' special [defense of unconscionability] . . . insofar as the special [defense] . . . [is] primarily directed toward the representations and actions of the [third party] . . . not the plaintiff"), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014).

Here, the trial court did not find that the plaintiff was responsible for any misconduct in the contract formation process. There is no evidence that the plaintiff intended to mislead the defendant or sought to take advantage of her lack of counsel. Rather, the allegedly rushed nature of the signing, folded pages, and failure to explain the settlement agreement and mortgage each stem from Caldwell, his attorneys, or the defendant's own constraints. In fact, the plaintiff was not even present at the time the defendant signed the settlement agreement. Moreover, as the other party to the contract, Caldwell can in no way be characterized as the plain-

tiff's agent, and the defendant does not argue that he was acting in such capacity. Accordingly, we conclude that the trial court's findings fail to support a determination that the settlement agreement was procedurally unconscionable as to the defendant.

The plaintiff also challenges the trial court's determination that the settlement agreement was substantively unconscionable. In particular, the plaintiff argues that the factual basis underlying the court's legal conclusion that the settlement agreement was substantively unconscionable—that the defendant received "no direct consideration" for agreeing to the mortgage on her home—was clearly erroneous. We agree.[13]

"[C]onsideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . [It] consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . [U]nder the law of contract, a promise is generally not enforceable unless it is supported by consideration." (Citations omitted; internal quotation marks omitted.) *NSS Restaurant Services, Inc.* v. *West Main Pizza of Plainville, LLC*, 132 Conn. App. 736, 740–41, 35 A.3d 289 (2011).

It is axiomatic that the "doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . The general rule is that, in the absence of fraud or other unconscionable circumstances, a contract will not be rendered unenforceable at the behest of one of the contracting parties merely because of an inadequacy of consideration." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 23, 804 A.2d 865 (2002). "Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 442, 927 A.2d 843 (2007).

The trial court's finding of "no direct consideration" is based on the fact that the defendant was not obligated to pay Wesconn's and Caldwell's business debts. In other words, the court held that the plaintiff's offer to forbear litigation and reduce Caldwell's indebtedness provided nothing of value in exchange for the defendant's interest in the Devon Avenue property. Consideration is not construed so narrowly.

As this court has repeatedly recognized, the intangible benefit of assisting one's family is sufficient to constitute valuable consideration. *Sullo Investments, LLC* v. *Moreau*, 151 Conn. App. 372, 383–84, 95 A.3d 1144 (2014) (holding that father's ability to help his son finance purchase of restaurant equipment, despite not personally receiving loan proceeds, established consideration); *Deutsche Bank National Trust Co.* v. *DelMastro*, 133 Conn. App. 669, 680–81, 38 A.3d 166 (finding

mortgage supported by consideration where mother "received the benefit of trying to help her son" and "incurred a detriment by assuming the role of guarantor to the mortgage," but did not receive financial benefit (internal quotation marks omitted)), cert. denied, 304 Conn. 917, 40 A.3d 783 (2012).

The fact that consideration did not directly flow from the plaintiff to the defendant in the form of a financial or legal benefit does not render the settlement agreement unenforceable. See *Sullo Investments*, *LLC* v. *Moreau*, supra, 151 Conn. App. 382–84. The settlement agreement was entered into in order to reduce Caldwell's and Wesconn's debts and avoid a potential collections judgment. If the agreement had been honored, Caldwell would have been able to retain his interest in the family home and the defendant would not have had to share title with the plaintiff. This is sufficient to establish consideration.

Finally, our courts have upheld contractual agreements as enforceable where one party incurs personal liability for a third person's debts in exchange for the other party's offer to forgo pursuing legal action on those debts.[14] *Hofmann* v. *De Felice*, 136 Conn. 187, 190, 70 A.2d 129 (1949) (reversing trial court's finding of no consideration where defendant assumed responsibility for her parents' debts in exchange for plaintiff's promise to abstain from pursuing collections action against her parents); see also *Markel* v. *DiFrancesco*, 93 Conn. 355, 359–60, 105 A. 703 (1919) (finding adequate consideration for note that wife signed with husband for benefit of plaintiff in exchange for plaintiff's agreement to extend maturity date of husband's existing indebtedness). "An agreement to forbear to sue in consideration of a written promise by a third person to pay the debt of another constitutes a valid contract." *Hofmann* v. *De Felice*, supra, 190. In the present case, the record indicates that the defendant incurred a liability—her interest in the Devon Avenue property—so that Caldwell could receive the direct benefit of the plaintiff's forbearing litigation and reducing his total indebtedness. Accordingly, we conclude that the trial court erred in holding the settlement agreement substantively unconscionable and, therefore, unenforceable as to the defendant.

The judgment is reversed with respect to the trial court's determination that the settlement agreement was procedurally and substantively unconscionable as to the defendant and the case is remanded with direction to render a judgment of strict foreclosure against the defendant; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff's complaint originally named Caldwell and Ditri as defendants. Caldwell did not appeal from the trial court's judgment of strict foreclosure rendered against him in favor of the plaintiff and is not a party to this appeal. All references to the defendant in this opinion are to Ditri.

[2] The defendant argues, as alternative grounds for affirmance, that the settlement agreement is invalid for (1) lack of consideration and (2) lack of mutual assent. She raised these issues for the first time in her brief to this court and did not file a preliminary statement of alternative grounds on which the judgment may be affirmed, in accordance with Practice Book § 63-4 (a) (1) (A). "[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . This rule applies equally to [alternative] grounds for affirmance." (Internal quotation marks omitted.) *Li* v. *Yaggi*, 185 Conn. App. 691, 711, 198 A.3d 123 (2018). Because the trial court's determination of unconscionability depended largely on its finding that the settlement agreement contained "no direct consideration," we address that issue later in this opinion. The trial court did not, however, make specific factual findings regarding mutual assent or resolve the issue in its memorandum of decision. Accordingly, the record is inadequate on the issue of mutual assent and, therefore, we decline to review that claim.

[3] The defendant did not possess an ownership interest in Wesconn and was not involved in its business operations.

[4] At trial, Caldwell claimed that his secretary/bookkeeper fraudulently drew on the line of credit for her own benefit, increasing it from the initial amount to $75,000. The secretary was charged with fraud in 2008, and eventually pleaded guilty to that charge. The trial court repeatedly rejected this assertion as a valid special defense to the plaintiff's claim in this case.

[5] Although the defendant was not obligated on the note to Wesconn and Caldwell and, therefore, was not a party to the collections action, she nevertheless executed the settlement agreement and the mortgage.

[6] The settlement agreement identified Wesconn and Caldwell's indebtedness as $175,000, plus interest and costs of collections, including attorney's fees. The terms provided for a settlement sum of $119,000, payable by an initial payment of $8000, due within three days of signing, and monthly payments thereafter. The settlement agreement also set the interest rate at 10 percent, with a default rate of 18 percent. As of July 16, 2019, the date of trial, the total indebtedness had increased to $435,485.84, with a per diem interest charge of $83.63.

[7] Paragraph 14 of the settlement agreement provides, "[t]he undersigned, Vicki A. Ditri, hereby agrees to the terms and conditions of this Agreement, and hereby guarantees the payment of the sums due hereunder by [Wesconn] to ROCKSTONE on a non-recourse basis, meaning that, notwithstanding the foregoing, ROCKSTONE and Vicki A. Ditri hereby acknowledge and agree that Vicki A. Ditri's liability for the payment of the sums due and owing by [Wesconn] herein shall be limited to Vicki A. Ditri's interest in, and to that certain real property commonly known as 11 Devon Avenue, Norwalk, Connecticut, which interest shall be secured by and subject to the terms and conditions of a[n] Open-End Mortgage, attached hereto."

[8] In his answer, Caldwell alleged the following special defense: "I had a [secretary] that embezzled a lot of money on opening lines of credit, cashing company checks made to my business, credit cards, cash, and was arrested. She was ordered restitution. She broke her probation and was rearrested after failing to pay 800 plus dollars a month back to me and Wesconn. She cried and told the judge she was on social security and disability and had no way of repaying me. The judge ordered her no restitution and she did not pay me back for approx[imately] $100,000.00. So sad."

[9] The court also awarded the plaintiff (1) attorney's fees and costs in the amount of $104,289.11; (2) appraisal fees in the amount of $1300; and (3) title search fees in the amount of $225.

[10] Specifically, the plaintiff sought articulation on the following points: (1) "In ruling that the [defendant] had sustained the burden of proof as to her unconscionability defense, did the court consider its concomitant finding that 'there [was] no proof of any misconduct by [the plaintiff]?' " (2) "After finding that ordinarily the failure to read a document is not a defense to enforceability but that the handling of the closing here created the requisite 'surprise,' did the court consider the fact that there was no evidence adduced to show that the [defendant] ever asked any questions about the subject matter of the documents or sought additional time to review the documents?" (3) "Was the factual and legal basis for the court's determination that the [defendant] received no 'direct consideration' for agreeing to the mortgage limited to the fact [that] she had no legal obligation to pay the debts of Wesconn or . . . Caldwell?" (4) "Did the court consider the plain language of paragraph 1 (a) and paragraph [5] of the settlement agreement as set forth in the memorandum of decision in ruling for the [defendant]?" And

(5) "[h]ow did the court's finding that the [defendant] was not a sophisticated business person excuse her failure to ask commonsense questions at the closing, or to seek more time to review and understand the documents?"

[11] Because we conclude that the court's findings did not support its legal conclusion that the settlement agreement was procedurally unconscionable, we need not address the plaintiff's claim that those findings are not supported by the record.

[12] In instances where the plaintiff is not an original party to the contract and, thus, played no part in the contract formation process, the defendant must demonstrate an agency relationship between the third party and the plaintiff's predecessor in interest. See *Bank of America*, *N.A.* v. *Gonzalez*, 187 Conn. App. 511, 515–16, 202 A.3d 1092 (2019).

[13] The trial court also determined that the "overly harsh" terms of the settlement agreement rendered the contract substantively unconscionable, but the court failed to identify the specific provisions it claimed to be oppressive. The trial court explained in its articulation that the consultation with counsel clause of the settlement agreement was "so contrary to the facts of the situation, that . . . it was consistent with the oppressive nature of the document . . . ." The clause states that, "[t]he parties hereto acknowledge each has had the opportunity to be advised by counsel and the parties agree that for all purposes (including the resolution of any ambiguities herein), this [a]greement shall be deemed to have been negotiated by the parties and strictly construed as if both parties shared equally in the drafting of [the] same." The trial court's conclusion, however, has little to do with the contract's substance and, instead, simply restates the arguments that the defendant was (1) unrepresented at the closing and (2) received inadequate consideration.

[14] Although neither party raised the argument, we also note that the defendant's role in the settlement agreement is similar to that of an accommodation party. General Statutes § 42a-3-419 (a) provides in relevant part that where "an instrument is issued for value given for the benefit of a party to the instrument . . . and another party to the instrument . . . signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party 'for accommodation.' " The accommodation party is obliged to pay the instrument in the capacity in which she signs, notwithstanding whether the accommodation party receives consideration for the accommodation. General Statutes § 42a-3-419 (b). "The want of consideration is the peculiar characteristic of accommodation paper" and, as such, lack of consideration is ineffective as a special defense. *Seaboard Finance Co. of Connecticut*, *Inc.* v. *Dorman*, 4 Conn. Cir. 154, 156, 227 A.2d 441 (1966).