******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# VICTOR VELASCO *v.* COMMISSIONER OF CORRECTION
## (AC 44505)

Moll, Clark and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of felony murder and conspiracy to commit robbery in the first degree, sought a writ of habeas corpus, claiming, inter alia, that his prior trial, habeas, and appellate counsel had provided ineffective assistance. The respondent Commissioner of Correction filed a motion to dismiss the habeas petition, arguing that the petitioner had released the state from all the claims set forth therein pursuant to a settlement agreement that the petitioner had entered into with the state after he filed the habeas petition. The settlement agreement related to an action filed by the petitioner in federal court against employees of the Department of Correction, in which he alleged that the conditions of confinement during his incarceration violated his constitutional rights. The settlement agreement contained a general release provision that released the state from all actions arising out of any matter that had occurred as of the date of the settlement agreement. The habeas court determined that the release encompassed the habeas petition and granted the respondent's motion to dismiss. Thereafter, the habeas court granted the petition for certification to appeal, and the petitioner appealed to this court, claiming that the settlement agreement was unenforceable because the terms of the release provision in the agreement were unconscionable. *Held* that the habeas court did not err when it dismissed the habeas petition: our Supreme Court in *Nelson* v. *Commissioner of Correction* (326 Conn. 772) rejected the argument that habeas rights should never be subject to waiver, stating that constitutional and appellate rights could be waived as long as the waiver was intentional; moreover, the settlement agreement between the state and the petitioner was not procedurally unconscionable, as the petitioner's counsel conceded that the petitioner entered into it knowingly and voluntarily, the petitioner was represented by attorneys who negotiated the settlement agreement on his behalf, and the petitioner failed to introduce any evidence to support his claims of procedural unconscionability; furthermore, although its release provision was broad, the settlement agreement was not substantively unconscionable with respect to the habeas petition because it was not limitless, barring only the petitioner's claims against the state that arose before the date of the settlement agreement, which included those raised in the habeas petition, by the time the parties executed the settlement agreement, the petitioner already had numerous opportunities to challenge his convictions, through appeals and collateral attacks spanning decades, and it was not so unreasonable or oppressive as to render it unenforceable, as, in exchange for the release, the petitioner received funds in his inmate trust account and the state agreed to forgo the collection of any amounts owed by the petitioner to the state for the cost of his incarceration from the proceeds of the settlement and to vacate a finding of guilty against the petitioner on a disciplinary report.

Argued April 4—officially released September 6, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Oliver, J.*, granted the respondent's motion to dismiss and rendered judgment thereon; thereafter, the court granted the petition for certification to appeal, and the petitioner appealed to this court. *Affirmed.*

*J. Christopher Llinas*, assigned counsel, for the

appellant (petitioner).

*Susan M. Campbell*, assistant state's attorney, with whom, on the brief, was *Joseph T. Corradino*, state's attorney, for the appellee (respondent).

*Opinion*

CLARK, J. Following the granting of his petition for certification to appeal, the petitioner, Victor Velasco, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus pursuant to Practice Book § 23-29. The court concluded that a certain "Settlement Agreement and Release" the petitioner had entered into with the state of Connecticut in 2018 (settlement agreement) barred the petitioner's habeas petition. On appeal, the petitioner argues that the settlement agreement is unenforceable because the terms of the release provision are unconscionable. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. The petitioner was charged with the crimes of felony murder in violation of General Statutes (Rev. to 1995) § 53a-54c and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (3). See *State* v. *Velasco*, 253 Conn. 210, 212–13, 751 A.2d 800 (2000). He also was charged under General Statutes § 53-202k with committing robbery in the first degree with a firearm. See id., 213. In 1998, following a jury trial, the defendant was found guilty on the first two counts. Id. "The trial court rendered judgment and sentenced the defendant to a term of imprisonment of sixty years on the felony murder conviction, execution suspended after fifty years, and a twenty year concurrent term of imprisonment on the conspiracy conviction. The trial court then determined, from the evidence presented at trial, that the defendant had used a firearm in violation of § 53-202k. Accordingly, the trial court also imposed a five year sentence to run consecutively with the other sentences for the conviction under § 53-202k." Id. On direct appeal, our Supreme Court vacated the § 53-202k sentence enhancement but affirmed the court's judgment in all other respects; id., 249; resulting in a sentence of sixty years' imprisonment, execution suspended after fifty years, and five years of probation. See id., 217.

Since the petitioner's conviction, he has filed numerous petitions for a writ of habeas corpus.[1] In addition, he has filed numerous lawsuits against the state of Connecticut alleging violations of his constitutional rights. See, e.g., *Velasco* v. *Hall*, Superior Court, judicial district of Hartford, Docket No. CV-15-5040120-S; *Velasco* v. *Bennett*, Superior Court, judicial district of Hartford, Docket No. CV-15-5040121-S. Pertinent to this appeal, the petitioner filed a 42 U.S.C. § 1983 action in the United States District Court for the District of Connecticut against prison officials at Corrigan Correctional Center alleging violations of his constitutional rights based, inter alia, on his conditions of confinement during his incarceration stemming from his designation as a gang member (federal case). See *Velasco* v. *Halpin*,

United States District Court, Docket No. 3:11CV463 (JCH) (D. Conn. November 20, 2017).[2] The parties ultimately settled that case via the settlement agreement executed on April 4, 2018. The settlement agreement, which the petitioner entered into while the instant petition for a writ of habeas corpus was pending in the Superior Court, includes a general release that provides in relevant part: "The [petitioner] . . . for and in consideration of the fulfillment of the obligation of the State of Connecticut described above, and other valuable consideration, the receipt of which is hereby acknowledged, does herewith forever discharge and release . . . the State of Connecticut and each of its current or former officers, agents, servants, employees, successors, legal representatives and assigns, from any and all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind, including attorneys fees and costs, monetary and equitable relief, whether known or unknown, which he had or now has or may hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this agreement, including any acts arising out of, or in any way related to the incidents or circumstances which formed the basis for the [federal case], including such actions as may have been or may in the future have been brought in the federal courts, courts of the State of Connecticut or any other state or forum, any state or federal administrative agency, or before the Claims Commissioner pursuant to [General Statutes] § 4-141, et. seq. This release shall include but is not limited to causes of action alleging violations of [the petitioner's] state and/or federal constitutional rights, his rights arising under the statutes and laws of the United States, the State of Connecticut or any other state, any other source of rights that may exist, and such causes of action as may be available under the common law."

Prior to commencing his federal case and entering into the settlement agreement, the petitioner had filed the instant habeas petition on November 17, 2014. He subsequently amended the petition on November 9, 2017; February 27, 2019; and October 4, 2019. The operative petition contains four counts, alleging (1) ineffective assistance of his trial counsel and prior habeas counsel, (2) ineffective assistance of his appellate counsel for his direct appeal, (3) a violation of the petitioner's constitutional rights arising from the state charging him with felony murder after he waived his right to a probable cause hearing, and (4) a lack of subject matter jurisdiction in the petitioner's criminal trial due to the petitioner's procedurally defective waiver of his right to a probable cause hearing.

On March 19, 2020, the respondent, the Commissioner of Correction, filed a motion to dismiss the petitioner's habeas petition on the basis that the settlement

agreement from the federal case released "the state of Connecticut from all constitutional claims from the beginning of the world until the writing of the settlement agreement, April 4, 2018."[3] In response, the petitioner argued, inter alia, that the settlement agreement was intended to settle only the federal case and that the agreement's terms were ambiguous.

The petitioner filed a supplemental objection dated June 26, 2020, in which he reiterated some of his contract interpretation arguments and further argued that interpreting the settlement agreement to bar his instant habeas petition would be unconscionable.[4] On September 9, 2020, the court, *Oliver*, *J.*, held remote arguments on the motion to dismiss.[5] During that proceeding, it came to the court's attention that the respondent never received a copy of the petitioner's supplemental objection. At the conclusion of the hearing, the respondent was permitted to file a reply to the petitioner's supplemental objection. The respondent filed his reply brief on October 1, 2020, arguing that the terms of the settlement agreement are clear and unambiguous and encompass the petitioner's habeas petition.

On December 2, 2020, the habeas court granted the respondent's motion to dismiss, concluding that "[t]he terms of the settlement agreement and release are clear and unambiguous and unquestionably encompass the instant matter." The habeas court subsequently granted the petitioner's petition for certification to appeal. This appeal followed.

In his principal brief on appeal, the petitioner argues that the habeas court erred when it dismissed his habeas petition. He contends that the settlement agreement on which the court based its decision is unconscionable due to the unequal bargaining positions of the parties and because the general release contained within the settlement agreement is unreasonable in its breadth and scope. The respondent counters that the settlement agreement is not unconscionable as it relates to the instant habeas petition because the petitioner was represented by counsel at the time he negotiated and entered into the agreement and was well aware of the implication of the release. The respondent also argues that the settlement agreement is not in any way one-sided, as the petitioner received significant benefits. We agree with the respondent.

We begin by setting forth our standard of review. "[W]hen a habeas court considers a motion to dismiss a petition for a writ of habeas corpus, [t]he evidence offered by the [petitioner] is to be taken as true and interpreted in the light most favorable to [the petitioner], and every reasonable inference is to be drawn in [the petitioner's] favor. . . . It is equally well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action . . . [and it] is

fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted; internal quotation marks omitted.) *Nelson* v. *Commissioner of Correction*, 326 Conn. 772, 780–81, 167 A.3d 952 (2017). "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 197 Conn. App. 597, 607, 232 A.3d 63 (2020), appeal dismissed, 341 Conn. 506, 267 A.3d 193 (2021).

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993). With regard to our interpretation of a settlement agreement, we note that, "[a]lthough ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007).

As for the doctrine of unconscionability, our courts have explained that "[t]he classic definition of an unconscionable contract is one which no [individual] in his senses, not under delusion, would make, on the one hand, and which no fair and honest [individual] would accept, on the other." (Internal quotation marks omitted.) *Grabe* v. *Hokin*, 341 Conn. 360, 371, 267 A.3d 145 (2021). "Substantive unconscionability focuses on the content of the contract, as distinguished from procedural unconscionability, which focuses on the process by which the allegedly offensive terms found their way into the agreement." (Internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 87 n.14, 612 A.2d 1130 (1992). "Procedural unconscionability is intended to prevent unfair surprise and substantive unconscionability is intended to prevent oppression. *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349, 721 A.2d 1187 (1998)." *Rockstone Capital, LLC* v. *Caldwell*, 206 Conn. App. 801, 809, 261 A.3d 1171, cert. denied, 339 Conn. 914, 262 A.3d 136 (2021). "Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Internal quotation marks omitted.) Id.

"[T]he question of unconscionability is a matter of

law to be decided by the court based on all the facts and circumstances of the case. . . . [O]ur review on appeal is unlimited by the clearly erroneous standard. . . . [T]he ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and . . . the trial court's determination on that issue is subject to a plenary review on appeal. It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 809–10.

With the foregoing principles in mind, we turn to the petitioner's claim on appeal. It is helpful to begin with what the petitioner is *not* arguing. First, the petitioner is no longer arguing (as he did before the habeas court) that the settlement agreement is ambiguous and that the release did not cover his habeas petition. The petitioner's counsel conceded at oral argument before this court that the settlement agreement is clear and unambiguous, thereby acknowledging that the petitioner's petition for a writ of habeas corpus falls within the release provision in the settlement agreement.[6] Second, the petitioner's counsel also conceded that the petitioner knowingly and voluntarily entered into the settlement agreement. To that end, the petitioner's counsel expressly conceded at oral argument that the petitioner is not arguing procedural unconscionability. Rather, the petitioner argues that the settlement agreement is substantively unconscionable and, therefore, unenforceable.

Citing to *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 353, he argues that, even in the absence of procedural unconscionability, a party can avoid being subject to a contractual provision if he can establish that the provision is substantively unconscionable. In his view, the unequal bargaining position of the parties and the "almost limitless breadth and scope of [the release provision], in the specific context of a prisoner's rights action, is substantively unconscionable." We are not persuaded.

As an initial matter, it does not appear that our appellate courts have fully and clearly resolved whether a contract must be both procedurally and substantively unconscionable for it to be unenforceable. Our appellate authority suggests that both must be present. See, e.g., *Bender* v. *Bender*, 292 Conn. 696, 732, 975 A.2d 636 (2009); *Rockstone Capital, LLC* v. *Caldwell*, supra, 206 Conn. App. 809. Each of those cases, however, cites to a quote from an opinion of our Supreme Court, stating that a determination of unconscionability "generally requires a showing that the contract was both procedurally and substantively unconscionable when made— i.e., some showing of an absence of meaningful choice

on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . .'' (Internal quotation marks omitted.) *Bender* v. *Bender*, supra, 732; *Rockstone Capital, LLC* v. *Caldwell*, supra, 809; see also *Hirsch* v. *Woermer*, 184 Conn. App. 583, 589–90, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018); *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 29, 191 A.3d 212 (2018). That quote, however, originated in *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 719, 846 A.2d 862 (2004), in which our Supreme Court was citing, interpreting, and applying *New York law*. Indeed, the unconscionability quote widely cited from *Hottle* came from a New York decision, *Gillman* v. *Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988). *Hottle* v. *BDO Seidman, LLP*, supra, 719–20.

Earlier Connecticut cases, on the other hand, one of which the petitioner points to, held that both prongs of unconscionability are not necessary. See *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 353 (''[e]ven in the absence of procedural unconscionability, [the defendant] might avoid liability . . . if he could establish that the clause was substantively unconscionable''). Whether our Supreme Court in *Bender* implicitly overruled its earlier decision in *Smith* (and others) is not a question we need to grapple with today, however, because, as we discuss herein, we reject the petitioner's sole claim that the settlement agreement is substantively unconscionable.

As noted, ''[s]ubstantive unconscionability focuses on the 'content of the contract'. . . .'' *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 87 n.14. That is, whether the ''contract terms . . . are unreasonably favorable to the other party . . . .'' *R. F. Daddario & Sons, Inc.* v. *Shelansky*, 123 Conn. App. 725, 741, 3 A.3d 957 (2010). In general, the basic test is ''whether, in the light of the general . . . background and the . . . needs of the particular . . . case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'' (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, supra, 184 Conn. App. 589. Substantive unconscionability is ''intended to prevent oppression.'' *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 349.

At oral argument in this appeal, the petitioner argued that this court should hold that any settlement agreement that waives or releases a prisoner's habeas rights is per se unconscionable. Our Supreme Court, however, expressly rejected a similar argument in *Nelson* v. *Commissioner of Correction*, supra, 326 Conn. 772. In *Nelson*, the petitioner had filed a habeas action alleging that ''he had received ineffective assistance of counsel at two criminal jury trials, both of which resulted in convictions and lengthy prison sentences.'' Id., 774. The

respondent moved to dismiss the action on the basis of "the terms of a stipulated judgment, filed by the petitioner and the respondent in connection with a previous habeas action concerning the same two trials, that barred the petitioner from filing any further such actions pertaining to those trials." Id.

The petitioner in that case argued, inter alia, that habeas rights should not be subject to waiver at all. Id., 785. Our Supreme Court flatly rejected that argument, holding that "[t]his court has concluded that both constitutional rights . . . and appellate rights . . . may be waived, if the waiver represents the intentional relinquishment of a known right. . . . The undisputed importance of the writ of habeas corpus notwithstanding . . . the petitioner has not persuaded us that a different rule should apply to such writs in this state." (Citations omitted.) Id., 785–86.

In the present case, the petitioner's counsel conceded that the petitioner entered into the settlement agreement knowingly and voluntarily. What is more, § 5 of the settlement agreement states that "[t]he parties hereto represent, warrant, and agree that each has been represented by or had opportunity to confer with his or her own counsel, that they have each thoroughly read and understood the terms of this Settlement Agreement and Release, have conferred with or had opportunity to confer with their respective attorneys to the extent they have any questions in regard to [the] same, and have voluntarily entered into [the] same to resolve all differences as stated herein."

The petitioner nevertheless contends in his appellate brief that the settlement agreement is substantively unconscionable because the bargaining positions of the parties were unequal. In his view, this case "involves parties who are, given the inherent structural nature of their relationship, incapable of dealing at arm's length, with relatively equal bargaining positions." He argues that "[the Department of Correction (department)] is fully dominant" and "has all the power," and that "the inmate has none." That argument, however, goes to the question of procedural unconscionability, which the petitioner's counsel abandoned at oral argument in this appeal. See *Bender* v. *Bender*, supra, 292 Conn. 733 ("[w]ith respect to the procedural prong, the court found that 'the parties were in relatively equal positions as to their ability to bargain' "). Moreover, even if we were to consider the petitioner's procedural unconscionability argument, we would conclude that the record does not support his claim. First, it is undisputed that the petitioner was represented by two attorneys in the federal case, who negotiated the settlement agreement on his behalf. Second, the petitioner failed to introduce any evidence whatsoever in support of this claim.

With respect to the substance of the settlement agreement, the petitioner contends that the settlement agree-

ment is substantively unconscionable because the release provision is "almost limitless" and applies "to any cause of action whatsoever that the inmate may have in the past, present, or future, whether known or unknown, whether related to the incident at issue or not." We disagree with the petitioner's characterization of the release provision. First, the release provision, although broad, is not limitless and does not bar the petitioner from bringing claims against the state in the future. The release provision bars all causes of action against the state arising from anything "from the beginning of the world to the date of [the settlement] agreement," which was executed on April 4, 2018. Nothing in the settlement agreement bars the petitioner from bringing claims against the state based on conduct occurring after the date the parties executed the agreement. This type of provision is commonly found in settlement agreements. Second, we need not decide whether the release provision in this case is overly broad or unconscionable with respect to every conceivable claim to which it may apply. The narrow question before us is whether the settlement agreement is unconscionable and, therefore, unenforceable with respect to the instant habeas petition, which was pending when the parties entered into the settlement agreement. We conclude that it is not.

In return for the petitioner's agreement to release the state, the state agreed to pay the petitioner $2000 to be deposited in his inmate trust account and to forgo the collection of any sum owed by the petitioner to the state for the cost of his incarceration from the proceeds of the settlement. Additionally, the state agreed to vacate a guilty finding in a disciplinary report and to allow the petitioner possession of his hard covered legal resource books in his cell so long as the hard covers were removed.

On our review of the settlement agreement and the circumstances surrounding it, we cannot conclude that the settlement agreement is unreasonably favorable to the state or so oppressive as to render the settlement agreement unenforceable. By the time the parties executed the settlement agreement, the petitioner already had numerous opportunities to challenge his convictions, through appeals and collateral attacks spanning decades. None of those challenges was successful. Given the circumstances, it is reasonable to conclude that the petitioner might see the settlement offer of thousands of dollars in his inmate trust account, coupled with the state's agreement to forgo the collection of any sums owed by the petitioner to the state for the cost of his incarceration from the proceeds of the settlement and the vacatur of a guilty finding on a disciplinary report, in exchange for the aforementioned release, as favorable. Indeed, the petitioner's instant habeas petition, which was pending when he entered into the settlement agreement and primarily claims inef-

fective assistance of his various counsel, is similar to habeas claims that he previously brought unsuccessfully. The only obvious benefit the state received in exchange for the consideration it provided was the release.

In support of his arguments, the petitioner directs this court to *Barfield* v. *Quiros*, United States District Court, Docket No. 3:18CV01198 (MPS) (D. Conn. May 17, 2021). He argues that in *Barfield*, the District Court denied a joint motion to approve a settlement on the ground that the release provision in that proposed agreement, which the petitioner argues was "virtually identical" to the release provision in the present case, was "overly broad and not fair, adequate, or reasonable." In his view, the same is true with the settlement agreement in the present case. We again are not persuaded.

The settlement agreement at issue in the *Barfield* case arose in a very different context. In *Barfield*, a plaintiff filed a class action on behalf of himself and all similarly situated inmates confined in a department facility, challenging the adequacy of medical screening, staging, and treatment for individuals in such custody, who have chronic hepatitis C infection. The parties in the case eventually entered into a settlement agreement, subject to final approval by the court. See Fed. R. Civ. P. 23 (e). Following a fairness hearing, the court denied the state's motion to approve the settlement agreement. A document contained in the petitioner's appendix indicates that the court determined that it would not "be a fair, adequate and reasonable settlement for *all* of the inmates at the [department] to release all of their claims from the beginning of the world to April 1 2020 . . . ." (Emphasis added; internal quotation marks omitted.)

Although the language of the proposed release in *Barfield* is similar to the release the petitioner challenges in the present case, the court in *Barfield* was required to answer a different legal question about an agreement that would apply to an entire class of individuals who had not negotiated the provision at arm's length. A court's determination that a general release in a particular class action settlement was not "fair, reasonable, and adequate" under the standard set forth in rule 23 (e) (2) of the Federal Rules of Civil Procedure, however, does not mean that the same release provision is substantively unconscionable for all purposes in every instance and as applied to all claims, including claims that were pending at the time the parties entered into a settlement agreement.[7]

For this reason, and the reasons previously discussed, we conclude that the settlement agreement is enforceable with respect to the instant habeas petition. We therefore conclude that the habeas court did not err in dismissing the petitioner's amended petition for a writ

of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner filed his first habeas petition on December 28, 1998, and withdrew it on November 8, 2002. *Velasco* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-98-0002825-S. He filed his second habeas petition on January 10, 2003, and the habeas court dismissed that petition without prejudice before reaching the merits. *Velasco* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-03-0473010-S (February 27, 2004). He filed his third habeas petition on January 25, 2005, and the habeas court denied that petition on the merits. *Velasco* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-05-4000321-S (August 13, 2008), aff'd sub nom. *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 987 A.2d 1031 (2010), cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). He filed his fourth habeas petition on November 6, 2009, and the habeas court denied that petition on the merits. *Velasco* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-09-4003267-S (May 1, 2013), appeal dismissed sub. nom. *Velasco* v. *Commissioner of Correction*, 156 Conn. App. 901, 110 A.3d 547 (2015), cert. denied, 317 Conn. 903, 114 A.3d 1219 (2015).

[2] Although not provided in the parties' appendices, this court has taken judicial notice of the operative complaint in the federal case for background purposes. See, e.g., *Stuart* v. *Freiberg*, 316 Conn. 809, 812 n.4, 116 A.3d 1195 (2015); *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 739 n.10, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011).

[3] The respondent also noted that two of the petitioner's other actions against the state's representatives had been dismissed based on the settlement agreement. See *Velasco* v. *Hall*, Superior Court, judicial district of Hartford, Docket No. CV-15-5040120-S (March 7, 2019); *Velasco* v. *Bennett*, Superior Court, judicial district of Hartford, Docket No. CV-15-5040121-S (September 25, 2018).

[4] The supplemental objection stated in relevant part: "Such interpretation of the settlement agreement by the respondent is unconscionable where: A.) the respondent implies that the petitioner agreed to terminate his habeas matter before this court; B.) the respondent implies that the petitioner agreed to terminate his rights under the federal constitution; C.) the respondent implies that the petitioner agreed to terminate his rights under the state constitution; D.) the respondent implies that the petitioner agreed to terminate his state civil cases in which the petitioner, as the plaintiff, had already won by default; and E.) . . . that the respondent implies that the petitioner agreed to these terms from the beginning of time to the end of the world, in exchange for $2000 and the dismissal of a prison disciplinary report, which had no [e]ffect [on] his conditions. Your Honor, it is clear that the [respondent relies] on the ambiguous language of this settlement agreement as the respondent interprets it one way while the petitioner's attorneys advised the petitioner, rightly, that the settlement would not affect any of the petitioner's other cases, especially this habeas matter."

[5] Neither party sought an evidentiary hearing in connection with the motion to dismiss.

[6] We note that the petitioner's appellate brief also does not contain any arguments concerning whether the release provision of the settlement agreement applies to his petition.

[7] We note that, although a federal District Court decision is persuasive authority, it is not binding on this court. See *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 475 n.11, 881 A.2d 259 (2005).